1817.

*Philadelphia.*

*Monday,*
December 15.

## CLARK *against* BAKER and others.

### EJECTMENT.

A, devised
to his daugh-
ter and grand-
daughter, to
hold to them
and the sur-
vivor of them
and to their
lawful issue
for ever, share
and share
alike, in two
equal shares,
and if either
died without
leaving lawful
issue of their
bodies, then
to the survi-
vor, and to her
lawful issue
for ever, but
if both die,
without leav-
ing lawful issue
of their bodies,
then to his lo-
ving friend,
D, W, to hold
to him, his
heirs, and as-
signs for ever,
and gave pow-
er to D, W,
and his said
daughter, to
sell all his
lands, if they
should judge
it more advan-
tageous for his
said daughter
and grand-
daughter, to
have the in-
terest arising
from the mo-
ney got for the
land than to

THIS was an ejectment for 37 acres of land, in *Pas-syunk* township, *Philadelphia* county, in which a case was stated for the opinion of the Court, as follows:

*Theodorus Lord*, being seised in fee, *inter alia*, of the premises in question, made his will on the 12th *August*, 1758, and, after ordering his funeral expenses and debts to be paid out of his personal estate, and bequeathing some legacies, proceeded as follows: .

" *Item.* I give and bequeath that tract of land, which I " got by my wife, *Martha Lord,* computed to be about forty " acres, to my grand-daughter, *Eleanor Lord,* and her heirs " for ever, subject to the incumbrance of a mortgage deed " on the same, given by my son, *John Lord,* which she is to " clear off, out of her other estate. *Item. I give, devise, and* " *bequeath, all the plantation whereon I live, computed ninety-* " *six acres, and appurtenances thereto belonging, to my said* " *daughter, Mary Lord, and grand-daughter, Eleanor Lord,* " *to hold to them, and the survivor of them, and to their law-* " *ful issue for ever, share and share alike, in two equal shares;* " *and my further will is, that if either my aforesaid daughter,* " *Mary Lord, or my grand-daughter, Eleanor Lord, die with-* " *out leaving lawful issue of their bodies, then, I give my* " *aforesaid plantation whereon I live, to the survivor, and to* " *her lawful issue for ever. But if both my said daughter,* " *Mary Lord, and grand-daughter, die, without leaving law-* " *ful issue of their bodies, then, I do give, devise, and bequeath,* " *my aforesaid plantation of ninety-six acres, to my loving* " *friend, Daniel Williams, of Philadelphia, to hold to him, his*

rent it, and directed the money arising from the sale thereof, to be put out at interest, and gave the interest thereof, in the same manner as he gave the plantation in the foregoing part, that is to say, one half to his daughter and her issue, and the other half to his grand-daughter and to her issue, and to hold to the survivor of them that have lawful issue, for ever, but if both his daughter and grand-daughter die, without lawful issue, then he gave the money arising from the sale of his aforesaid lands and tenements, to his loving friend D, W, and to his heirs forever; *held,* that the daughter and grand-daughter were tenants in tail in possession, with vested cross remainders in tail to each, and a vested remainder in fee to D, W.

" *heirs, and assigns, for ever. Item.* My further will is, I do
" hereby fully impower my aforesaid friend, *Daniel Williams*,
" and my daughter, *Mary Lord*, to sell and dispose of all my
" lands and tenements whatsoever, and wheresoever, if they
" shall judge it more advantageous for my said daughter and
" grand-daughter, to have the interest arising from the mo-
" nies got for the land, than to rent the plantation out to a te-
" nant, and absolutely to convey in fee simple, all my afore-
" said plantation, either by private or public sale or sales,
" unto any person or persons that shall purchase the same,
" and to sign, seal, and execute, all such deeds and assu-
" rances in writing, needful to him and them purchasing the
" same, *and the money arising from the sale thereof, I direct*
" *to be put out to interest, and the interest thereof, I give in*
" *the same manner as I give the plantation in the foregoing*
" *part, that is to say, one half to my daughter, Mary Lord,*
" *and her issue, and the other half to my grand-daughter,*
" *Eleanor Lord, and to her issue, and to hold to the survivor*
" *of them that have lawful issue for ever, but if both my daugh-*
" *ter and grand-daughter die, without lawful issue, then, I*
" *give the money arising from the sale of my aforesaid lands*
" *and plantation, to my said loving friend, Daniel Williams,*
" *and to his heirs for ever ;* and lastly, I do hereby nominate
" and appoint, my said daughter, *Mary Lord*, and my said
" loving friend, *Daniel Williams*, to be my executors, to this
" my last will and testament, and I do farther impower, and
" appoint, my said friend, *Daniel Williams*, to be guardian
" and trustee, for my grand-daughter, *Eleanor Lord*, and to
" take in possession, her part of my estate, for her use,
" hereby revoking any other will, heretofore at any time made
" by me, in witness whereof," &c.

The testator died on or about the 19th *September*, 1758,
leaving issue, his daughter, *Mary Lord*, and grand-daugh-
ter, *Eleanor Lord*, the devisees mentioned in the said
will. *Mary Lord*, afterwards married *John Searson*, and
*John* and *Mary Searson*, at *April* Term, 1759, suffered a
common recovery, of a moiety of the plantation, devised to
the said *Mary* and *Eleanor*. In the same year, a writ of
partition was sued out, by *John Searson* and *Mary*, his wife,
against *Eleanor Lord*, on which judgment, *quod partitio fiat*,
was obtained. On the 20th *November*, 1759, partition was
made, and 47 acres, 3 quarters, and 3 perches, besides al-

*1817.*

CLARK
*v.*
BAKER
and others.

lowance for roads, being one moiety in value of the said plantation, were allotted to *John Searson* and *Mary*, his wife, in right of the said *Mary*, in severalty. And the residue of the said plantation, containing and including the premises in question, were allotted to *Eleanor Lord*, in severalty. At the ensuing Term of *December*, 1759, judgment was rendered, that the partition remain firm and stable for ever. *Mary Searson* died on or about the year 1760, leaving issue, a daughter, *Sarah*. *Eleanor Lord*, the granddaughter, and devisee of *Theodorus Lord*, died under age and without issue, in the year 1767. On the death of *Eleanor*, *Sarah*, the daughter of *Mary Searson*, entered and took possession, and afterwards, to wit, in the year 1782, married *William Ferguson*, who held possession in right of his said wife, till her death. *Sarah Ferguson*, had issue by her said husband, several children, all of whom died in her life-time, except her daughter, *Ann Ferguson*.

*Sarah Ferguson*, died in *January*, 1793, and *Ann Ferguson*, her surviving daughter, died in *March*, 1793, a minor, unmarried and without issue.

In the year 1795, *William Ferguson*, for a valuable consideration, purchased of *Edwyn H. Sandys* and *Ellen*, his wife, the said *Ellen* being heir at law of the said *Ann Ferguson*, and the said *William Ferguson*, being tenant by the courtesy, and as such, holding the premises in question, the reversion of the said moiety of the said plantation, whereof the said *Eleanor* died, seised as aforesaid.

In the year 1801, *William Ferguson* died, seised of the premises in question, having first made his will.

The defendants are severally in possession, under title derived from the executors of *William Ferguson*. *Daniel Williams*, (who was not of kin to *Theodorus Lord*, the testator,) died in the year 1795, having first duly made his will, dated 22d *May*, 1794, and thereby impowered his executors, to dispose of all his estate, in possession, right or expectancy. The executors named in the will of *Daniel Williams*, being either dead, or removed by the Court, letters of administration, with the will of *Daniel Williams*, annexed, were granted to *Clayton Earle*, and *Thomas Mitchell*.

On the 2d day of *April*, 1808, *John Field*, obtained a judgment, in the Supreme Court, against the said *Clayton Earle* and *Thomas Mitchell*, administrators, as aforesaid, for

the sum of 1093*l.* 8*s.* 3*d.* due to him from *Daniel Williams.*

Under executions issued upon this judgment, the premises in question were levied on, condemned, and on the 15th *July*, 1813, sold by the sheriff of *Philadelphia* county, to the plaintiff.

*B. Tilghman* and *Binney*, for the plaintiff, contended, that *Mary* and *Eleanor Lord*, took by this will vested estates tail, with cross remainders in tail, with a vested remainder in fee, to *Daniel Williams;* and, therefore, the title to the portion in dispute in this ejectment, of which no common recovery had been suffered, was in the plaintiff, under *Daniel Williams.*

1. The intent of the testator was to give to his daughter, *Mary*, and grand-daughter, *Eleanor*, and their issue, indefinitely; and that is an estate tail. The rule in *Shelly*'s case remains unbroken; and was recognised by this Court in *Findlay* v. *Riddle*.(*a*) Here is a preceding estate given in other land to *Eleanor Lord*, and her heirs for ever, which shews, that the testator knew the meaning of the words he was using. So, this remainder is given in proper terms to *Daniel Williams*, and his heirs and assigns for ever. A devise to one for life, and after his death to the issue of his body, and the heirs of the body of such issue, or to one and his children or issue, where no issue is, at the time living, is an estate tail. *Dodson* v. *Grew*.(*b*) *Wild's Case.*(*c*) *Lovelace* v. *Lovelace.*(*d*) *Southley* v. *Stonehouse.*(*e*) *Walter* v. *Drew.*(*f*) As to the word "leaving," it does not, in case of real estate, limit the dying without issue to the time of the devisee's death, unless there is something in the will plainly indicating that intent. In this respect, the distinction is, between real and personal estate; in the latter, the words "leaving no issue," are construed to mean, a dying without leaving issue at the devisee's death; but in the former they mean, dying without issue generally, *Forth* v. *Chapman.*(*g*) In *Geering* v. *Shenton*,(*h*) this distinction is recognised by Lord MANSFIELD, and the devise being to S, and the heirs of his body

(*a*) 3 *Binn.* 139.
(*b*) 2 *Wils.* 322.
(*c*) 6 *Co.* 17.
(*d*) *Cro. Eliz.* 40.

(*e*) 2 *Ves.* 610.
(*f*) *Com. Rep.* 372.
(*g*) 1 *P. Wms.* 667.
(*h*) 1 *Cowp.* 410.

**1817.**

**CLARK
v.
BAKER
and others.**

lawfully begotten, and their heirs for ever, but in case the said S, should die without leaving issue of his body, then to G, it was held, that S, took an estate tail, though the estate was charged with 100 pounds, payable to D, within one year after G, or his heirs, should be possessed of the same premises. So in the *University of Oxford* v. *Clifton,*(a) this principle was carried still farther ; for there one by his will, devised lands of which he was seised in fee, to C, and the issue of his body lawfully to be begotten, living at his death, and for want of such issue, to the University of *Oxford;* and it was held an estate tail in C. That the use of the word survivor, is not sufficient to take this case out of the general rule, is evident from the case of *Roe* v. *Scott,*(b) where the same expression occurred. They also cited *Knight* v. *Ellis.*(c) *Gibson Dev.* 33. *Finch,* 282. *Goodright* v. *Pullen.*(d) 2 *Bl. Com.* (by *Christian,*) 115. *Butler's Fearne,* 226 to 229, *Hawley* v. *Northampton.*(e) 3 *Call.* 348. 2 *Yeates,* 400.

2. The two devisees in this case, took cross remainders in tail. 1 *Saund.* 185, *b,* note 6. *Holmes* v. *Meynel.*(f) 8 *Mass. Rep.* 17. In this will there are no clashing interests ; no devises for life. An estate tail is left to each, and the estate is not to go over to *Daniel Williams,* till both are dead without issue.

3. *Daniel Williams* took a vested remainder in fee. 1 *Fearne,* 328. 4th ed. 2 *Saund.* 388.

*Rawle* and *Ingersoll,* for the defendants. We contend, that the daughter and grand-daughter took estates for life, with contingent remainders in fee, to all their issue equally ; in case either died without *leaving* issue at her death, the survivor took for life, with a similar remainder in fee to her issue ; if both died without issue living at the time of their death, *Daniel Williams* took in fee, by way of executory devises. It is contrary to the genius of our law of descents, to create estates tail by implication. In *England,* the policy is different, because there the eldest son only is heir. Where estates are construed tail by implication, it is generally for the sake of the issue. 2 *Fearne,* 194. 197. 179. 181, But where the remainder is given over to a stranger, the

| | |
|---|---|
| (a) *Amb.* 385. | (d) 2 *Ray.* 1440. |
| (b) *Butler's Fearne,* 474. | (e) 8 *Mass. Rep.* 3. |
| (c) 2 *Fearne,* 491. | (f) *Sir T. Ray.* 452. |

Court will not, for his sake, construe a precedent devise an estate tail, when it might be taken as a fee. *Attorney General* v. *Gill.*(a) *Tilburgh* v. *Barbut.*(b) 2 *Fearne*, 180, 181. The word *issue*, may be construed children, or heirs, as will best promote the intention of the testator, *Backhouse* v. *Wells.*(c) *Luddington* v. *Kime.*(d) *Beauclerk* v. *Dormer.*(e) *Atkinson* v. *Hutchinson;*(f) and is, properly speaking, a word of purchase, and will be so taken unless such construction interferes with the plain intent of the testator. 1 *Fearne*, 152. *Amb.* 274. 2 *Atk.* 371. 2 *Wooddeson*, 244–5. *Finch.* 279. 3 *Binn.* 156. and cases cited there by YEATES J. 1 *Binn.* 559. 3 *Johns.* 292. *Fosdick* v. *C.*(g) *Cro. Eliz.* 40. The object of the testator here is, that all the issue should take equally; which is inconsistent with the nature of an estate tail. The devise is to them for ever. It is equally plain, that *Daniel Williams* was not to take, in case they died leaving issue living. The rule in *Shelly*'s case, does not suit the law of descent in this country, and is not decisive in the case of wills. Opinion of YEATES J. in *Findlay* v. *Riddle.*(h) In wills, the intent of the testator is the polar star. What is the manifest intent here? He gives to his daughter and grand-daughter, and the *survivor* of them, and their issue for ever. This would be a fee simple, to go over to the survivor; but it is afterwards explained, that it should go to the survivor, only in case one dies without leaving issue. The power to sell is an important feature. It is to be exercised at any time. It is inconsistent with the idea of an estate tail; especially, as *Daniel Williams* was one of the persons without whom a sale could not be made, and it could not be expected that he would consent to a sale, if the preceding estates were estates tail. He says, that he gives the money as he gave the land, but the money could not be entailed, and, therefore, he did not intend the land to be. He could not have intended, that the money should go to one of the issue in exclusion of the rest; it must have been meant to be divided amongst all. They also cited 10 *Johns.* 12. 1 *Hen. & Munf.* 240.

*Reply.* To give a fee simple to the issue, defeats the tes-

1817.

CLARK
v.
BAKER
and others.

(a) 2 P. Wms. 369.
(b) 1 Vez. 89
(c) 1 Eq. Ca. Ab. 184.
(d) 1 Salk. 224.

(e) 2 Atk. 308.
(f) 3 P. Wms. 259.
(g) 1 Johns. 440.
(h) 3 Binn. 139.

1817.

CLARK
v.
BAKER
and others.

tator's intent as to *Daniel Williams.* To give only a life estate to the daughter and grand-daughter, defeats it as to the issue. The devise to the parent and issue is in present terms, and they cannot take in remainder; no such case can be shewn. Therefore, if the parents take a life estate, the issue cannot take at all. All the cases where an estate for life, or in fee, is given to the first devisee, are out of the question. The words *for ever,* apply to the ancestor as much as the issue; and to an estate tail, as much as an estate in fee; as several of the cases shew. The case of *Forth* v. *Chapman,* though questioned by Lord KENYON, still remains the law at this day. The word " survivor," does not alter the case. It is consistent with what we contend for. It means, to the one who personally or in her issue was survivor. *Roe* v. *Scott.*(a) The power to sell, is not inconsistent with the idea of an estate tail. He did not give the money to his daughter and grand-daughter, but only the interest, which proves, that he meant to lock up the principal in favour of the issue. But in default of them, he gives the principal to his friend, *Daniel Williams.*

TILGHMAN C. J. The question in this case arises on the will of *Theodorus Lord.* What estate was given to the testator's daughter *Mary,* and grand-daughter *Eleanor,* and what to *Daniel Williams,* under whom the plaintiff claims? In order to support the title of the plaintiff, it must be shewn, that *Daniel Williams* took a vested remainder in fee. We must endeavour to ascertain the intention of the testator; and that being done, it will only remain to consider, whether the intention be consistent with law. But the intention is to be made out, not by conjecture, but from the words of the will; and if the testator makes use of words, which have already received a legal construction, the Court must give them that construction, unless he has plainly shewn that he meant to use them in another sense. In order to come at the intent, in this case, several clauses of this will are to be adverted to, and I think, it will appear that there was one main intent, which is preserved through every part, though not always with equal clearness. The testator sets out with devising the land in question, " to his daughter *Mary,* and grand-daughter *Eleanor Lord,* to hold to them and the survivor of

(a) *Fearne,* 474.

1817.

CLARK
v.
BAKER
and others.

them, and to their lawful issue, *for ever*, share and share alike, in two equal shares."· Here is a plain intent to provide for each devisee, and her issue, *for ever;* that is to say, as long as issue should remain, which might possibly be for ever. The intent is equally plain too, that the issue of each devisee should take *through* the ancestor, by *descent*, and not *with* the ancestor, by *purchase*, because the land is to be divided into but *two* parts ; whereas, if even all the children of the daughter and grand-daughter were to take as purchasers, with their parents, it might be necessary to divide it into many parts : and also because there is no mode, but by descent, in which the estate can be secured to the issue indefinitely. Now this intention of giving to the parents first, and then to the issue as long as issue should remain, is an intent to give an estate tail ; and, in fact, the words here used, have received a well settled, legal construction, according with the testator's intent. That a devise *to A. and his issue*, (no issue being born at the time of the devise) gives an estate *tail* to A, was decided in *Wilds'* case, 6 *Co.* 17. The same construction was put on similar words, in *Lovelace* v. *Lovelace, Cro. El.* 40. A devise " to one and his issue male," no issue being then born, held that the devisee took an estate in *tail male ;* and these decisions have never been questioned. The testator then proceeded as follows. " And my further will is, that if either my said daughter, or grand-daughter, die without leaving lawful issue of their bodies, then I give my aforesaid plantation to the survivor and her lawful issue, for ever ; but if both my said daughter and grand-daughter die, without having lawful issue of their bodies, then I do give and bequeath my aforesaid plantation to my loving friend *Daniel Williams*, to hold to him, his heirs and assigns, for ever." The testator, in this clause, preserves the same intent of giving a moiety to each devisee and her issue, for ever; with this addition, that if either should die without issue, her share should go to the other and her issue. The expressions, *without leaving issue*, have been relied on by the defendant, as shewing an intention confined to issue living at the time of the death of the daughter, or grand-daughter. But I cannot think so : whenever the issue is extinct, though after many generations, the original devisor is said, in law, to be dead *without leaving issue.* These words, *without leaving issue*, applied to *personal* estate, have been held to mean is-

sue living at the death of the person to whom the property is given in the first instance. But not so with regard to land. This is the distinction taken in the case of *Forth* v. *Chapman*, (1 *P. Wms.* 667.) and it is well founded, because it carries into effect the intention of the testator. It would answer no purpose to understand *issue indefinitely*, in the case of *personal* property, because the law would not permit that issue to take. But it answers the best purpose in case of real property, because the issue may take accordingly. I take it to be established, that the words *without leaving issue*, applied to real property, are to be understood issue indefinitely, unless there be some other words shewing an intent to restrict them to the time of the death of the first taker. For this position, I refer to *Fearne*, on contingent remainders and executory devises, 476 to 479, (6th edit. by *Butler*,) 3 *Call.* 348. 8 *Mass. Rep.* 3. *Hawley* v. *Northampton. Forth* v. *Chapman* seems to have passed through the fire, and come out pure. Another objection to an indefinite failure of issue, being intended, in the case before us, is drawn from the term *survivor*, "*to the survivor and her lawful issue.*" I understand it thus :—if either daughter, or grand-daughter die without lawful issue, (indefinitely,) then I give it to the other, whether she or any of her issue be then living ; this gives full effect to the testator's meaning, and is supported by good authority. *Chadock* v. *Cowley*, *Cro. Jac.* 695. "Devise of land, "to my son *A*, and his heirs forever, and of other land, to "my son *B*, and his heirs forever ; and I will, that the *sur*- "*vivor shall be heir to the other, if either of them die without* "*issue.*" *Held*, that *A* and *B*, took estates tail with cross remainders to each. The same point will be found in *Fearne*, 474, (note by *Butler*.)

But, to return to the will of *Theodorus Lord*. The devise to *Daniel Williams*, "in case both daughter and "grand-daughter die, without leaving lawful issue of their "bodies," is in perfect accordance with the intention of an estate tail to daughter and grand-daughter, and cross remainders in tail to each. *Daniel Williams* was the last object of the testator's bounty; having provided for child and grand-child, and their issue, as long as issue should exist, there was no further occasion to tie up the estate, by an entail, and accordingly the expressions are immediately. varied, and instead of *issue*, the land is given "to *Daniel*

1817.

CLARK
v.
BAKER
and others.

" *Williams*, to hold to him, *his heirs and assigns forever.*" The testator, though no lawyer, understood how to give an estate in fee simple, and the difference of expression, in the devises to *Williams*, and those preceding, is demonstrative of a different intent; of an intent, not to give a fee simple to the daughter or grand daughter, or their posterity. The testator then proceeds to give a power to his friend *Williams*, and daughter *Mary*, to sell the estate and convert it into money, in case they should think it more for the advantage of the daughter and grand-daughter, to receive the interest of the money, than the rent of the land. This power is said, by the defendants, to be inconsistent with an estate tail. Not at all. It is collateral to the estate tail, but not inconsistent. The testator had a right to give an estate tail, subject to be defeated by this power. He then goes on to provide for the disposition of the money, in case of a sale; and here again, he reiterates his first intent; he declares, that he meant to dispose of the money, in the same manner that he had given the land; that is to say, he directs it to be put out at interest, and gives, *not the principal, but* " one-half of the " *interest*, to his daughter *Mary* and her issue, and the other " half to his grand-daughter and her issue, and to hold to " the survivor of them and her lawful issue, forever; but if " both daughter and grand-daughter should die without law- " ful issue, then *the money* arising from the sale of the said " plantation, to go to his loving friend, the said *Daniel Wil-* " *liams*, and his heirs forever." The same distinction is kept up; the principal to be locked up, for the benefit of the daughter and grand-daughter and their issue, indefinitely, with cross remainders to each, but failing the issue of both, the principal to go to *Daniel Williams* at once. And yet the defendants contend, that this bequest of the interest of the money shews an intent to give the land to the *issue* of the daughter and grand-daughter *in fee.* Their argument is as follows :—The money is given, as the land was given; but the law would not permit a bequest of money to *Daniel Williams*, after an indefinite failure of issue in the first taker, *and this point of law the testator must have known;* therefore he never intended to give an estate tail in this land, to his daughter and grand-daughter, but only an estate for life to each, with remainders to their issue respectively in fee, with an executory devise to *Daniel Williams*, in case both daugh-

1817.

CLARK
v.
BAKER
and others.

ter and grand-daughter should die, without either of them having left issue living at the time of her death. The fallacy of the argument is apparent. It is assumed, that the testator knew, he could not entail money, in the very face of his own assertion, that 'he intended to entail it, for he gives it by proper words of entail, *(to them and their issue.)* He might well mistake the law ; for there is nothing in the nature of money, which prevents it, when put out at interest, from being preserved for the issue, *ad infinitum.* It is only the policy of the law, which forbids it.

Having given my idea, of what the testator intended, it may be worth while to take a view of his intention, as exhibited by the defendants. They say, that he intended to give his daughter and grand-daughter an estate for life, with remainder in fee, to the issue of each ; and that *Daniel Williams* took a contingent interest, *(by way of executory devise,)* not to take effect, unless both daughter and grand-daughter died, without either leaving issue living at the time of her death. Suppose, then, the daughter to have issue, and die leaving issue, and the grand-daughter surviving her ; and then, the issue of the daughter to die, the grand-daughter still living, and afterwards she dies without issue. Here is the event provided for by the testator. Both daughter and grand-daughter are dead, and have left no issue. In this case, the estate ought to go to *Daniel Williams.* No, say the defendants, he cannot take, because, when the daughter died, she left issue, and although that issue be now dead, *Williams* is precluded. What is this but to defeat the will of the testator ? But this is not the worst of it. In the case which I have supposed, the grand-daughter, who had survived the daughter and the issue of the daughter, could not take the daughter's share under the defendant's construction, because the issue of the daughter took an estate in fee. I confess, this appears to me, to be destroying the intention, instead of carrying it into effect. And what makes such construction less allowable is, that there is not a word in the will, giving an estate for *life* to the daughter and grand-daughter, with remainder to their issue. On the contrary, the expressions throughout, are *to them and their issue.* In short, the basis of this construction is an assumed intent, not appearing in any words of the will. Upon the whole it appears, that the testator intended to give estates tail, in possession, to *Mary*

and *Eleanor Lord*, with vested cross remainders in tail to each, and a vested remainder in fee to *Daniel Williams*. There is no principle of law, in opposition to this intent, and I am, therefore, of opinion, that under the facts stated, the estates tail having become extinct, *Daniel Williams* was entitled to the fee. Judgment should, therefore, be entered for the plaintiff.

1817.

CLARK
*v.*
BAKER
and others.

GIBSON J. was absent.

DUNCAN J. To form a judgment on this will, it is only necessary to ascertain the plain common sense intention of the testator. There is no conflict between particular and general intention; between the intention of the testator, and some unbending rule of construction. There are two general intents manifested by apt words. The first is, to give an estate to his grand-daughter, *Eleanor Lord*, and her issue, in one moiety, and to his daughter, *Mary Lord*, and her issue, in the other moiety; securing to the survivor and her issue the whole, in case of the death of either without issue, to preserve a succession to the issue, from generation to generation, forever. The second is, when the whole generation of the daughter and grand-daughter become extinct, the whole and entire estate shall go over to *Daniel Williams* and his heirs. There is no other construction which will effectuate this general intent, but this one. In what manner then is this to be effected, consistently with the rules of law? By giving to the first takers, *Eleanor* and *Mary Lord*, estates tail, with vested cross remainders in tail to the issue, with a remainder, when their estates are spent, to *Daniel Williams* and his heirs. I do not design to enter into a critical examination of all the cases which the learning and research of the counsel have brought into the field, nor attempt to reconcile decisions apparently clashing; as this would be composing a treatise on the abstruse doctrines of devises, instead of delivering an opinion on this will; but shall rest satisfied with stating certain undeniable principles, and apply them as rules of construction and of property, to the case under consideration: admitting, in the most explicit terms, that where a set form of words, regulating the disposition and descent of estates, have a meaning fixed to them by a uniform series of decisions, it is the duty of Courts to adhere to that construction as a rule

VOL. III.—3 P

of property; but granting, in terms equally explicit, that where such words are accompanied by other expressions of the testator, shewing that he did not mean to use them in the manner that technical language would import, but in some manner explained by himself; that that explanation shall prevail over the legal meaning assigned to particular words, and govern the construction. Legal words are to be taken in a legal sense, unless there be a demonstration plain, to use them in a different sense; not saying so in express terms, but by plain expression or necessary implication of his intent, which is the same thing, from words or circumstances which vary the case. In this course there is security afforded to men's possessions, while at the same time all proper indulgence is granted to the manifest intention of the testator. But so long as estates tail remain recognised by our laws, they must remain subject to the established rules of estates tail, and these rules ought not to be departed from by Courts, whatever speculative opinions Judges may entertain of their policy or expediency; for if rights were to be decided on such motives, there would be an end to all security of property; and the indulgence of such speculations would increase the evil they were intended to prevent, locking up all property and creating perpetuities of the most pernicious kind; for no prudent man would purchase, if he were to hold his property by such precarious tenure.

The word *issue*, is the important word in this will. The issues of *Eleanor Lord* and *Mary Lord*, were constantly in the contemplation of the testator, in declaring in what manner his estate should go after his death. He has used it not less than seven times. Has he used it as conveying the sense of indefinite issue, or as describing particular persons existing at particular times? If he has used it in the former sense, by making *Eleanor Lord* and *Mary Lord* the stocks of succession to future generations, including their whole posterity, all the heirs of their bodies, then it is an estate tail in the stock, the ancestors, and a remainder in tail to the issue, as branches from that stock; and the remainder over to *Daniel Williams*, and his heirs, takes effect after their indefinite failure; which has taken place; but if the remainder over was to take effect only on a limited contingency, *viz.* the death of the survivor without issue living at the time of her death, as the event did not happen, it does not take effect.

1817.

CLARK
v.
BAKER
and others.

The devise is to *Mary Lord* and *Eleanor Lord*, of the planta-
tion whereon he lived, to hold to them, and the survivors of
them, and to their lawful issue for ever, share and share alike.
Let us consider this devising clause, before we consider the
remainder over to *Daniel Williams*. The word *issue*, in a will,
is a word of limitation, or of purchase, as may best serve the
intention of the testator. But where it is used without explana-
tory words, of itself, it is a word of limitation, to be taken as
*nomen collectivum*, taking in all issues to the utmost extent of
the families, equally with heirs of the body; and then, the word
is as proper a word of limitation, as heirs of the body. By this
sentence then, there is a clear limitation in tail, of equal moie-
ties to *Eleanor* and to *Mary*, " to hold to the survivor and
their lawful issue for ever." I cannot doubt, but that cross
remainders to the issue, which are favoured if between two
only, arise by necessary implication; because it is the evident
intention of the testator, that the whole estate should remain
in the issue of the first taker, so long as there were any such,
and that when the remainder should vest in possession in
*Daniel Williams* and his heirs, it should not vest in parcels,
but go over entire, and at one time. A devise to one and his
lawful issue for ever, is a clear estate tail. *For ever,* is im-
plied in every estate tail; which is an estate of inheritance,
descending according to the will of the donor, and in con-
templation of law, may continue for ever, as much as a grant
to one and his heirs, implies for ever. These partial estates
of inheritance, thus carved out of the general estate by the
testator, it cannot be supposed, that he, who had with so
much care, secured the interest of the issues of both, when
he came to make an ultimate disposition of his estate to *Da-
niel Williams*, a stranger to his blood, intended to change and
alter the limitations before expressly made. To alter and
enlarge this limitation to the issue, some stronger and more
unequivocal expression of intention would be required than
the words, " if my daughter *Mary* or grand-daughter *Ellen*,
should die without leaving issue," giving these words the
utmost latitude, that any judicial decision has given them,
or even any solitary or *obiter* opinion. In the devises of
real estate, they do not, *ex vi termini*, mean a dying with-
out issue living at the death of the first taker. These
words, with other explanatory words, tantamount to such

meaning, may have been so construed, to preserve an es-
tate expressly given, to prevent the destruction of an exe-
cutory devise, as being too remote after an indefinite failure
of issue, where there has been a first devise in fee, of real
estate; or where there has been a bequest of personal pro-
perty, which, in the case of a devise of real estate, would
give an estate tail, by giving them this meaning, to effectuate
the intention of the testator. But in the case of a devise of
land, creating an estate tail, there must be some more circum-
scribed clause in the will, other than the words, dying without
*leaving issue*, denoting an intention to confine the remainder
over to a dying without issue then living, before the devise
to issue, with remainder over, can be restrained. It must
then appear, from the whole context of the will, that the tes-
tator intended them in a contracted sense. *But where*, as
in this case, there is a devise creating an express estate
tail, including and providing for all the issue, to enlarge
the estate into a fee simple, would be violating the legal
meaning of the words, not for the purpose of effectuating
the general intent of the testator, of preserving an estate
which he has expressly given, but for the purpose of vio-
lating that intent; destroying the estate of the issue, who
appear to have been the peculiar objects of the testator's
*care*, upon an implication not necessary, but so doubtful
and obscure, that the counsel of the defendants cannot fix
any precise meaning to this supposed implication. For
if, as is contended by them, an estate in fee, in the first
taker, is created, then the devise to the issue is destroy-
ed. Or if, as is again contended by them, an estate tail
in the first taker, is converted into a fee simple in the
survivor, on the death of one of them, without issue living
at her death, the right of the issue of the survivor in that part
is extinguished. For if it be true, that if *Eleanor* never had
issue, or having issue, such issue had died in the lifetime of
*Mary*, that *Mary* would have taken the moiety not under
the will, not as an estate transmitted by the will, but as heir
at law of *Eleanor*; the issue of *Mary*, would, in that part at
least, have been defeated. Thus breaking the thread which
connected the parts of *Eleanor* and *Mary*, and the line of de-
scent, as directed by the testator, putting out of joint the plan
and whole system of the will. But this would not be the only

consequence of this construction. For if *Mary* held a part in fee simple, as heir of *Eleanor*, and a part as tenant in tail, under the will, I cannot see how in any possible event, *Daniel Williams* and his heirs could receive any benefit under this will. For it is certain, that if *Mary* held *Eleanor's* part, not by any limitation of the will, but as her heir, then she held it discharged from any subsequent remainder, to *Williams* ; and in that event, if both had died, never having had issue, *Williams* could not have taken that part ; and it is equally certain, that he could not take *Mary's*. For if all the estate went over to him, it must go entire. He must take the whole or nothing. But if the estate of *Eleanor* was converted into a fee simple in *Mary*, it must likewise have converted *Mary's* own part into a fee simple, to preserve the unity of estate intended by the testator; and thus the estate of the issue of *Mary*, the survivor, would have been destroyed in the whole ; contrary to the express words of the will. But a still farther consequence would arise from this construction. Both these ladies would not die at the same instant. One must have survived the other. If *Eleanor* died without issue living at the time of her death, *Mary* took in fee, and if *Eleanor* left issue living, the issue took in fee ; and so of *Mary* ; and although the survivor never had issue, *Daniel Williams* and his heirs could take nothing. For, I repeat it, *Daniel Williams* and his heirs, must either take the whole, or nothing ; and this shews the necessity of implying cross remainders ; of considering it as one whole disposition of the estate. The words " dying without leaving issue," are equivocal, and may be explained by other parts of the will. The word " survivor," cannot have the effect of changing the whole estates devised. To give it the effect contended for, would be manifestly repugnant. For this very remainder is predicated on the death of the survivor without issue. The disposition does not rest in the survivor. For there is an ultimate disposition to *Daniel Williams*. So that it still comes back to the inquiry, of the intention of the testator, and of the operation of the words, used in one clause of the will, " and if either of them shall die without leaving issue." But here it is not a devise to the survivor alone, but to the survivor and the issue of such survivor; not to the issue then living, but to the issue of the survivor, for ever ; which, as clearly as words can express it, devises a continuing estate

to the issue, as long as there are any, " for ever;" not a con-fined limitation of the estate, but a general one.   " Issue," as used in this will, cannot be taken distributively.   The issue cannot take as tenants in common; they must take as a generation.   Suppose *Eleanor* to have left issue, a son and a daughter ; would the daughter have inherited equally with the son?   If the issue took distributively, as persons desig-nated, and not by way of limitation, then, on a devise to one and his issue, if he had issue living, the ancestor and the issue would take as joint-tenants ; as persons described and in existence.   At one period, and before it was fully settled, that the word " issue," was as proper a word of limitation, as heirs of the body, this was the law. 2 *Fonbl.* 71.   The issue must take by way of remainder ; and the devise over is an estate by way of remainder.   For it is a settled rule that no devise over, shall be taken as an executory devise, which can take effect as a remainder. 9 *Rep.* 128. 2 *Fonbl.* 70. I take it to be settled, as any decision can be, that if lands are devised to one, and if he die before issue, or not leaving issue, the limitation creates an estate tail.

But the defendants have called, in aid of their construction, the provisions as to the money arising from the sale of the land. I draw a different conclusion from the purchase money to be put to interest, and the interest I give in the same manner I have given the plantation in the foregoing part ; that is to say, one half to my daughter *Mary Lord*, and her issue, and the other half to my grand-daughter *Eleanor*, and her issue, to hold to the survivor of them that has lawful issue, for ever ; but if both die, without lawful issue, then I give the money arising from the sale of the aforesaid lands and plantation, to my friend *Daniel Williams*, and his heirs.   A stronger indication of intention could not be, that the daughter and the issue should enjoy the plantation so long as their lives conti-nued to exist, and when they were no more, that *Daniel Wil-liams* and his heirs were to hold it.   Where the interest of money is devised to one for life, and there is a subsequent bequest of the money itself, as distinguished from the inter-est, it affords strong evidence of intention.   Formerly it was *held*, that where the interest of money was bequeathed to one for life, and if he should die without issue, the principal to go over, such limitation was good ; *Smith* v. *Clever*, 2 *Vern.* 38. 2 *Fearne*, 360, yet later cases have exploded this

*distinction.* But *Fearne* considers it still material, as furnishing evidence of intention.

My opinion, therefore, is, that all the issues of *Eleanor Lord* and *Mary Lord*, were to inherit the estate, before it went over; and that, to effectuate that intention, *Eleanor Lord* and *Mary Lord* took estates tail, with vested cross remainders in tail, to their issues, with a vested remainder in fee, to *Daniel Williams* and his heirs. This will carry into effect, the whole intention of the testator, and scope of his designs; as to *Eleanor Lord* and *Mary Lord* and their issue, and to *Daniel Williams* and his heirs, preserving whole, the course of descent prescribed by the testator, until the whole estate vested, by its ultimate destination, in *Daniel Williams* and his heirs. In confirmation of this, I have just to add, that the testator, when he intends a fee simple, gives it in appropriate words; as in the first devise to *Eleanor*, to her and her heirs for ever, and in the last remainder to *Daniel Williams*, to him and his heirs for ever; and when he intends an estate tail, he uses equally appropriate language— *issue.*

1817.

CLARK
*v.*
BAKER
and others.

Judgment for the plaintiff.*

---

* The Reporters have been favoured by the Chief Justice with a copy of the opinion of the High Court of Errors and Appeals, in a case arising upon the construction of a will, delivered on the 25th *July*, 1807, by the Chief Justice, when President of the Court of Common Pleas of the city and county of *Philadelphia*.

TILGHMAN, President. This case arises out of the will and codicil of *Peter Sheetz*, deceased. Whether his son, *Francis Sheetz*, also deceased, took an estate in *fee simple* in the land devised to him, indefeasible on his attaining the age of 21, is the question. If he did take such an estate, then the plaintiff, his heir at law, is entitled to recover, if not, the law is with the defendant.

The testator devised to his son *Francis*, two tracts of land, " to have and to hold " the same, to him, and to his heirs and assigns, for ever," subject to the payment of 2300*l.* which he gave to his son *Peter;* to be paid as follows, viz. 100*l.* at the expiration of a year from the testator's decease ; then, the sum of 100*l.* for three years successively; the next year the sum of 500*l.* ; the next year the sum of 150*l.*; and then, each year 150*l.* till the whole should be paid. He also gave the said *Francis*, sundry horses, cattle, sheep, implements of husbandry, and articles of household furniture. He gave his wife *Catherine*, an annuity of 25*l.* a-year for her life, to be paid by the said *Francis*, and charged the same on the lands devised to him. He also devised to his wife, a house and lot for her life, and gave the same, after her death, to his sons *Francis* and *Peter*, their heirs and assigns, for ever. After that, comes the following clause. " But in case my said son *Francis* shall die under the " lawful age of 21 years, or without lawful issue, then, and in that case, I give my " said son *Francis's* share in my said *whole estate* unto my said son *Peter*, and his " heirs and assigns for ever; and in case my said son *Peter* shall die under the law- " ful age of 21 years, or without lawful issue, as aforesaid, then, and in that case, I

" give and bequeath my said son *Peter*'s share in my said whole estate, unto my " said son *Francis*, and to his heirs and assigns, for ever; but in either case, the sur- " vivor of my said two sons, (*Francis* and *Peter*,) shall then pay unto my said " daughter *Elizabeth*, (the plaintiff,) or her heirs, the sum of 500*l.* but to be taken " out of the last payment of my first mentioned plantation."

By a codicil, dated two days after the will, " he ordered and particularly re- " quested, and did not allow his said son *Francis*, to *sell* any part of the land which " he had in his said will given to him, until he arrived at the age of 30 years, and " then he might do with the same as he pleased."

I will first consider the will, unconnected with the codicil, and then examine them together. The first devise to *Francis*, is a fee simple, expressed as clearly as words can make it, accompanied too, with an obligation to pay large sums of money, which is inconsistent with an intent to give any estate less than a fee simple. Afterwards comes the *qualification*, that in case he should die under 21, *or* without issue, then and in that case, the estate should go over to his brother *Peter* in fee; here is no- thing inconsistent with the fee simple first given to *Francis*. But the question is, how are these last words to be construed? They contain two contingencies, a dying under 21, and a dying without issue. Must they *both* concur, before the estate pas- ses to *Peter?* or may he take on the happening of *either*. We are not without autho- rities to assist us in the construction; these expressions have often been used in wills, and often received the consideration of courts of justice. And from the case of *Price* v. *Hunt* in the year 1684, *Pollexfen*, 645, down to that of *Hawkesworth's lessee* v. *Morgan*, determined by the Court of King's Bench in *Ireland*, whose judgment was affirmed in 1805, by the *British* House of Lords, the word *or*, in cases like the pre- sent, has been construed *conjunctively;* that is to say, it has been held that the exe- cutory devise over, did not take effect, unless the first devisee died under 21, and *also*, without issue. The same construction was made in *this* Court, in the case of a *deed*, in *Massey's lessee* v. *Rawle;* and in the Supreme Court, according to one of the cases cited, *Cheeseman's lessee* v. *Wilt*, in case of a *will*. But the defendant's counsel insist, that wills are not to be construed according to *adjudged cases*, unless directly in point, that every will depends on its own circumstances, and every will shall be construed so as to carry into effect the intention of the testator, provided such intent be lawful. These principles are sound, and the authorities I have men- tioned, are founded on them, for, in order to effectuate the intent of the testator, the word *or* is stripped of its usual *disjunctive* signification, and converted into a *conjunction*. Why has this been done? because, if it was construed *disjunc- tively*, the devisee, who was the first object of the testator's bounty, might die under 21, leaving children, and those children would be deprived of the estate, which would pass over to other persons. It is very natural that a man should give his son an estate in fee, and yet provide that it should go to a third person, in case his son died without issue, and before the age when the law permitted him to dispose of it, either by contract or by devise; but that he should give him a fee simple, and then deprive his children of it, because he happened to die before 21, is altogether unna- tural and improbable. The cases, therefore, that have been cited on this subject, stand on a foundation not to be shaken. But, granting that those expressions are generally to be construed, as I have mentioned, still it is said, if there are any other parts of this will which indicate a contrary intention, the construction may be different; undoubtedly it may. Let us see then what more there is in the will. The defend- ant's counsel rely on one fact not mentioned in the will, but found by the first ver- dict, which may be properly taken into consideration; it is this:—that at the time of making the will, *Francis* was 20 years and 8 days old; and therefore, it is said, the probability of his having issue before 21, was so small, that his father cannot be supposed to have regarded it. I do not see the force of this argument. It was very *possible*, and not very *improbable*, that *Francis* might marry, and either have issue or have a wife pregnant, in 12 months from his father's death. We are to construe this will according to the situation of things at the *time it was made*, without taking

subsequent events into consideration. It is worthy of remark too, that in the last adjudged case which was cited, (*Hawkesworth's lessee* v. *Morgan*, in 1805,) the first devisee wanted but 15 months of being 21 years old, when the will was made. But no regard was paid to this objection.

Let us now see what effect the codicil will have, considered as connected with the will. *Francis*, is restrained from *selling* his land till he attains the age of 30. Whether this restraint on a fee simple estate, is consistent with the principles of law, is immaterial. We are endeavouring to discover the intent of the testator, and it is certain, that he *intended* to lay the restraint. The defendant's counsel contend, that the age of 30 is to be substituted for the age of 21, annexed *to the devise to Francis*, in the will; and then it will stand thus:—In case *Francis* dies without issue, or before he attains the age of 30, then, in that case, *Peter* shall take. Now, in the first place, this is doing violence to the words of the codicil; for *Francis* was not to be restrained from *devising* the estate to whomsoever he might think proper, nor from any other act consistent with a fee simple, save the power of *selling*. The testator must have had some reason for imposing this restraint. The most obvious one is, that he had discovered symptoms of a heedless, extravagant temper in *Francis*, which made it prudent to put it out of his power to *sell*, till he arrived at a very mature age; but it might be by no means necessary to debar him of the power of *devising* it, in case he died *before* 30. But there are other parts of the will to be considered, in deciding the effect of this codicil. If *Francis* had survived the age of 21, and lived to the age of near 30, and then died, what in the mean time was to be done with the payments of his mother's annuity, and his brother *Peter*'s legacy; they must have been paid. By the time *Francis* arrived at the age of 29, he would have paid 1720*l*. How was he to have raised this money, unless his estate in fee simple had been absolute, on his attaining the age of 21? And could the father have intended, that *Peter* should have received such large sums from his brother, and afterwards have had all the land? It cannot be supposed. And yet, it is to support an intent of this kind, that the words of the codicil are to be perverted from their natural meaning; whereas, if they are construed according to their obvious sense, all inconveniences are prevented, and the will, and codicil, stand in perfect unison.

Upon the whole of this case, it is the unanimous opinion of the Court, that *Francis Sheetz* took an estate in fee simple, on the land devised to him, which became absolute when he attained the age of 21 years. Consequently, the plaintiff, who is his sister of the whole blood, and his heir, is entitled to recover in this ejectment.

The judgment of the Supreme Court must be reversed.

> Judgment to be entered in this Court for the plaintiff in the ejectment, and the record to be transmitted to the Supreme Court.