# Heffner *against* Knepper.

H. devised all his real estate to his six sons, to be equally divided amongst them in quality and quantity, and charged it with the payment of legacies, and then added, " It is also my intent and meaning that if any of my sons or daughters should die without a lawful issue, then is such a one's portion to be divided among their living brothers and sisters or their heirs." *Held*, to vest in the devisees an estate in tail, with a remainder in fee in the brothers and sisters.

ERROR to the common pleas of *Franklin* county.

John Heffner and others against Peter Knepper and Jacob M'Ferran.

The following case is stated for the opinion of the court, subject to writ of error, by either party.

The title to the lands, for which this ejectment was brought, it is admitted, was vested in fee simple in John Heffner, deceased. On the 30th of August 1823, the said John Heffner made his last will and testament, duly proved and recorded. Albertus Heffner was one of the sons and devisees of the said John Heffner. After making the said last will and testament, the said John Heffner married Christiana Brobst. The said Christiana is yet living, but has been provided for by a marriage contract, dated the 1st of March 1824. The said John Heffner, after making the said will and testament, had a son born, named Daniel Heffner not therein provided for. And the said John Heffner died, leaving the said widow, and the said Daniel, besides the children named in the will. On the 12th of February 1828, George Wertz and John Heffner, executors of John Heffner, deceased, appointed John Flanagan, William Boals, and David Wertz, to ascertain and value the parts of David, Frederick, and Albertus Heffner, according to the said will, and the tract of land, for which this suit is brought, was valued and allotted to Albertus Heffner. On the 11th of August 1828, David Wertz, the guardian of the said Daniel Heffner, petitioned the Orphans' Court of Franklin county, for the valuation and partition

[Heffner v. Knepper.]

of the real estate of the said John Heffner, deceased, and such proceedings were had in said court, that on the 10th of November 1828, the tract of land for which this suit is brought, was decreed by the said court to C. Heffner, guardian of the said Albertus Heffner, in right of his said ward, as his freehold to him and his heirs and assigns forever. On the 4th of December 1833, the said Albertus Heffner, having arrived at full age, entered into articles of agreement with the said Peter Knepper, for the sale of the said land for which this suit is brought. The said Albertus Heffner had not, at the date of said agreement, nor afterwards paid any money or any thing towards the legacies charged on his land. On the 13th of January 1834, Albertus Heffner and his wife executed a deed for the land in dispute, to Peter Knepper. On the 17th of January 1834, the said deed was read in open court, and on motion, was ordered by the Court of Common Pleas, of Franklin county, to be recorded in the sheriff's deed book, and was recorded in the sheriff's deed book. The said Peter Knepper, on the 30th of May 1834, paid Abraham Gonder and his wife, 450 dollars, in full of the balance of their legacy, under the will of the said John Heffner, deceased, by conveyance, to said Gonder, of 15 acres of the land bought from Albertus Heffner. The said Peter Knepper has also paid to Catharine Helman 160 dollars, being interest on her legacy, under the will of the said John Heffner, deceased. The said Peter Knepper has also paid Mary Miley 71 dollars 59 cents, being interest on her legacy, under the said will. The said Peter Knepper paid to Albertus Heffner the said 1100 dollars, except the last instalment, of 250 dollars, mentioned in the said articles of agreement between them.

The said Peter Knepper, also, on the 31st of March 1835, paid off the recognizance mentioned in said proceedings in the Orphans' Court, entered into by C. Heffner, guardian of Albertus Heffner. On the 9th of October 1832, the said Frederick Heffner, one of the plaintiffs, entered into articles of agreement with David Monn, and also paid Peter Knepper for the sale of land, which said articles are referred to and made a part of this case. On the 30th of December 1835, the said David Heffner executed a release to the said Peter Knepper of all his interest, claim, and right in the land for which this suit is brought. In 1835, the said Albertus Heffner died without lawful issue. The said Albertus Heffner left a widow who is yet alive. The said Jacob M'Ferran has purchased a part of the land in dispute from the said Peter Knepper.

The said John Heffner, in his life time, made deeds in fee simple to his sons, John, Henry, and Conrad, of parts of his real estate, mentioned in said will, and took their bonds, which constitute a part of the estate of the said John Heffner, deceased. The said John, Henry, and Conrad were married and had children at the time of said conveyances.

If, under these circumstances, the court shall be of opinion that

the plaintiffs are entitled to recover the said land for which this suit is brought, or any part of it, then judgment to be entered for the whole premises, or such part or portion as they may be entitled to recover. If the court should be of opinion that the plaintiffs are not entitled to recover, then judgment to be rendered for the defendants. The said deed from Albertus Heffner and wife, to Peter Knepper, was recorded on the 24th of February 1834, in the recorder's office, of Franklin county. The deed from Peter Knepper and wife, to Gonder, is referred to and made a part of this case. The plaintiffs are the surviving brothers and sisters of the said Albertus Heffner.

Will of John Heffner referred to.

" It is, also, my desire that all my personal estate within a convenient time after my decease, shall be disposed of by my executors, and the money accruing thereof, to pay all my just debts, and pattant all my land which is unpattant to this date, and as for my real estate, the same shall be equally divided in quantity and quality amongst my six sons, viz. John, he is to retain the house and messuage where he now lives; Henry, Conrad, David, Frederick, and Albertus, each of the five last sons and to have equally in amount with my son John, although, nevertheless my son John has received two hundred dollars of his mother's portion, which is to be deducted from his portion in this my last will and testament, and to be divided among him and his five brothers, the mills and the water works is my desire become the property of Frederick and Albertus, together with the dwelling, barn, and out houses, &c., and so much land adjoining the mills, and house, and barn, to become in equal value with their natural brothers, and should they be minor children at the time of my decease, then shall the said mills be rented to my son Henry, at a proper rent, by their guardians; also, with the water courses and water rights, shall forever be for the benefit of said mills and machinery, which are now or which may be erected hereafter; also, it is my aim to have all my real estate equally divided to my six sons equally in quantity and quality in my life time; otherwise, my executors shall appoint three disinterestet and honest citizens to divite the same, in quality and quantity, and my said sons, viz. Henry, Conrad, David, Frederick, and Albertus, may take their portion at its proper value, and after my six sons paid to their sisters the following portion, then shall they have a free release for the property they possess, to wit. [The testator then proceeds to make bequests to his several daughters.] And, further, it is my will, that the mountain land shall be equally divided among my six sons; and, also, it is my will that my son, John, shall have 20 acres of pine land, from John Funks, along up the main road, in his portion. It also is my intend and meaning, that if any of my sons or daughters should die without a lawful issue, then is such a one's portion to be equally divided amongst their living brothers and sisters or their heirs; the above

[Heffner v. Knepper.]

mentioned sums I give and bequeath to my daughters, is to be paid by my six sons to their sisters or their mentioned heirs, within eight years after my decease, that is to say: one eighth part is to be paid yearly, and every year to their sisters, until the whole is paid; but if my two last sons, Frederick and Albertus, should be minor children, by my decease, their portion is to be paid by them in the same gales, after they become of age, except those which is excepted in the contents of this my last will and testament."

The court below (Thompson, president) rendered a judgment for the defendants.

*Chambers* and *M'Culloch*, for plaintiffs in error.
*Smith* and *Washington*, for defendants in error.

The opinion of the Court was delivered by

SERGEANT, J.—The question argued in this case is one which has frequently been discussed and decided. The testator directs his real *estate* to be equally divided, in quantity and quality, amongst his six sons. This, by virtue of the word estate, would carry the fee. He afterwards declares, that if any of his sons or daughters should die without a lawful issue, then is such a one's portion to be equally divided amongst their living brothers and sisters or their heirs. This limitation over upon a dying without lawful issue, reduces the fee to an estate tail; and the whole devise is then of an estate tail with a remainder in fee in the brothers and sisters.

The attempt in this, as in the former instances, is to construe the limitation over to be an executory devise, by considering the dying without issue the same as dying without leaving issue. But the construction with us has always been, that the words dying without issue refer to an indefinite failure of issue. Thus, in Haines *v.* Wilmer, 2 *Yeates* 400, the testator devised to his son a tract of land to him, his heirs, and assigns forever, he paying to his sister 100 pounds, and to his mother 4 pounds per annum, during her widowhood; and after similar devises to his other children, added, and likewise it is my will, that if either of my children should die without issue lawfully begotten, then each and every of their respective shares shall be equally divided amongst the survivors. Great stress was laid on the word, survivors, and the case of Pells *v.* Brown, *Cro. Jac.* 590, relied on as an authority for construing it an executory devise. But all the judges agreed, that no case decided, on wills of real estate, that the words were to be restricted to a dying without issue at the time of the death, and that the word, survivors, had often been ruled to make no difference.

The subsequent cases run in the same channel without deviation. Clark *v.* Baker, 3 *Serg. & Rawle* 470; Gause *v.* Wiley, 4 *Serg. & Rawle* 409; Caskey *v.* Brown, 17 *Serg. & Rawle* 441. The last case was in 1835, Sharp *v.* Thompson, 1 *Wheat.* 139,

[Heffner v. Knepper.]

which is substantially the same as Haines *v.* Wilmer, and they cannot be distinguished from the present case.   These decisions may be considered as having established a rule of property, under which many titles to real estate are held, and which it is of the first importance should be preserved uniform and stable, as well· for the security of property held under it, as for furnishing a guide to the ascertainment of title in future.

Judgment affirmed.