Lessee of DAVID HAINES <em>against</em> JACOB WITMER.

Devise several tracts of land to several children, their heirs and assigns forever; but if either of the children should die without issue lawfully begotten, then each and every of their respective share shall be equally divided amongst the survivors; adjudged that the devisees take estate tail, and the remainders over are too remote to take effect as executory devisees

JACOB HAINES being seized of certain lands in Lancaster county, in fee simple, made his will in writing, dated, 3d of 7th month 1762, duly proved, whereby he devised to his wife Hannah, her riding mare, and sundry other specific articles, to her and her heirs forever ; also 12l. per annum, to be paid her as is hereafter devised, the Indian corn patch, the north end of the house, &c." Then came the following devise ; " I give, bequeath and devise to my son Daniel Haines, all that tract of lands which my wife's grandfather gave her as a legacy, except ten acres to be taken off next to John Haris's land ; in lieu whereof I give

and bequeath to him ten acres of land of the place hereafter devised to my son Jacob Haines, beginning, &c., containing ten acres, to him, his heirs and assigns forever; and it is my will that my son Daniel pay to his sister Hannah 100*l.*, whereof 50*l.* to be paid when she arrives at the age of eighteen years, and the remainder in three years after; the said Daniel shall also pay to his mother Hannah yearly during her widow-hood, 4*l.* in money, four bushels of wheat, and four cords of firewood, to be cut a sufficient length and drawn near to her door."

He then devised to his son Samuel, his heirs and assigns, another parcel of land, beginning, &c., paying to his brother Isaac 100*l.*, and to his mother the like yearly sum of 4*l.* during her widow-hood, and the same quantity of wheat and firewood as before directed to be delivered by Daniel.

He then devised to his son Isaac, his heirs and assigns, another parcel of land, begining, &c.

He then devised to his son Jacob, his heirs and assigns, the remainder of all his lands and tenements, paying to his sister Hannah 100*l.*, and to his mother the like yearly sum of 4*l.*, and the same quantity of wheat and firewood as before directed to be delivered by Daniel.

He then directs that his personal estate shall be equally divided between his wife and children, and makes provision that a certain water course and road running through the lands devised, shall not be obstructed or turned.

Next follows this clause; "and likewise it is my will, that if either of my children shold die without issue lawfully begotten, that each and every of their respective shares by me to them before devised, shall be equally divided to and amongst the survivors" and finally appoints James Gibbons and Moses Brenton his executors.

The testator died, leaving issue five children, Daniel, Samuel, Isaac, Jacob and Hannah, all mentioned in his will. The widow conveyed to Daniel in fee the lands devised to her by her grandfather, except the ten acres. Daniel entered into the ten acres devisd to him, and on the 24th February 1768, conveyed to Jacob Witmer, the father of the, defendant, in fee, in consideration of 125*l.*, who erected a large barn on the ten acres, and with his son have enjoyed the possession thereof above thirty years. Daniel lived twelve years after his sale and then died, having never suffer'd a common recovery, leaving issue David Haines, the lessor of the plaintiff, his eldest son and heir at law.

The question was, whether Daniel Haines took an estate in fee tail, in the ten acres, under his father's will?

It came before Shippen and Yeates, Justices, at a court of Nisi Prius at Lancaster, on the 17th April 1798, by consent, for their decision, as on a case stated. If they should be of opinion that a fee tail was vested in Daniel Haines by the will, it was agreed that judgment should be entered for the plaintiff, but if he took the ten acres in fee simple, then for the defendant.

Mr. Charles Smith for the defendant, insisted that the ten acres were given to Daniel by way of exchange for the ten acres taken from his mothers's lands. His father had no right te devise real property which did not belong to him.

There can be no doubt of Daniel's taking a fee simple under the first part of the devise; the difficulty rests on the operation of the last clause in the will.

This limitation is a mere contingency, on Daniel's dying without issue, leaving at least two brothers; for if only one child survived, the event would not fall within the specified words, " equally to be divided amongst the survivors," in the plural number. Here the words have the same signification as if the children had been mentioned by their respective names. If Jacob and Hannah died first leaving issue, and then Danial had died without issue, the whole would have gone over to Samuel and Isaac. Again supposing Samuel had died leaving issue, and then Daniel had died without issue, the issue of Samuel, who was the heir at law of Daniel, would not take, but the survivors would succeed to the whole.

It appears that the testator meant to break the general course of descent. Samuel, as the eldest brother of Daniel, would have been his heir, in case he died without issue; but the limitation over is to all the survivors. This case is similar in principle tot hat of Pells v. Brown, Cro. Jac. 590. The form of words is of no moment where the intention is evident, and the words are sufficiently large. Prec. Cha. 69. Fairfax v. Heron. And in Nichols v. Skinner, Ib. 529, where a father devised personal estate to his four children, payable to their respective ages of 21 years, or marriage; and in case any of them should die before the time of payment, or should die without issue, then his or her share to go to the survivors or survivor of them and his heirs; the master of the rolls held that the limitation could not be intended a dying without issue generally, which would make it void; but a dying without issue in such a manner as that the survivors or survivor might take it, which must be during their

lives, and consequently good. S. C. 2 Equ. Cas. Abr. 346. So in Hughes *v.* Sayer, 1 Wms. 534, where one devised personal estate to A and B his nephews, and upon either of their dying without issue, then to the survivor, &c. it was adjudged, that the words "dying without children," must be taken to be children living at the death of the party; for it could not be taken in the sense, whenever there should be a failure of issue, because the immediate limitation over was to the surviving devisee, and it was not probable that if either of the devisees should die leaving issue, the survivor should live so long as to see a failure of issue, which in notion of law was such a limitation as might endure forever. The reasoning in the case of the master of the rolls, applies strongly to that before the court. If lands be devised to A, his heirs and assigns forever, and if he die leaving no issue behind him, then over, the limitation over is good by way of executory devise; and Lord Kenyon held, that the distinction, as to the words dying without issue, when applied to real or personal estate, is not founded in law. 3 Term Rep. 143, 146, Porter *v.* Bradley *et al.* This decision still retains its full authority; it remains uncensured by Powell in the 4th edit. of 2 Fearne. 206, and is not impugned by the subsequent opinion of Lord Kenyon in 6 Term Rep. 307, Daintry *v.* Daintry. In the present will too, the words " assigns forever," are attached to the first devise to Daniel, which are strongly indicative of an intention, that the devisee should take an assignable estate to him and his heirs. 2 Fearne. 209. No such necessity as that in Roe *v.* Scott and Smart, 2 Fearne 203, exists here, to construe the estate to Daniel as a tail, for there the limitation over was to the survivors or survivor. It is concluded, therefore, that the remainders over are good, and will operate by way of executory devise, under a reasonable construction of the will in question. Devise of a manor to A's wife, until his son should come to the age of 24 years, and then his wife to have one third part of the manor for life, and his son to have the residue; and if his son should die before he come to his age of 24 years without heirs of his body, the land should remain to I. S., the remainder over; the son hath no estate tail, for no tail should arise, if the son doth not die before his said age of 24 years. 3 Leon. 64. Hinde *v.* Lyon.

Mr. Hopkins for the defendant, agreed, that the intention of the testator should be effectuated, but in order to discover the same, it was necessary to consider all the will together. It was clear, that the scrivener who drew the will, was not well acquainted with the legal acceptation of the terms " his heirs and assigns;" he has attached the words, "his heirs forever" to a bequest of mere specific goods to the widow.

The testator must have meant by the term "heirs," superadded to the devise to Daniel, his lineal descendants, because the estate is to cease on his dying without issue, and is limited in that case to go over to his collateral heirs. The generality of the expressions in the preceding part of the will, are narrowed down to a particular sense by the subsequent limitation. That it was intended the issue should take is very clear. Whether the testator took all the probable different events into consideration—whether a reasonable man might not judge very differently from him, are circumstances of no moment in the construction of his will, the words of which must govern. A supposed improvidence can form no argument whatever in its interpretation.

It is contended, that all the brothers took vested estates tail in the different lands devised to them, with a contingent remainder in fee to the survivors. And where an estate can take effect as a remainder, it shall never be construed as an executory devise. 2 Fearne. 203. There are no expressions in this will, from which it can be collected that the limitation to the survivors, was to take effect on Daniel's dying without issue, at the time of his death. It has been remarked, that the chance of the survivors taking is very remote, if it is confined to an indefinite failure of issue. But it is well known, that a life estate is good, after an estate tail, because by possibility it may take effect.

Most of the authorities cited by the defendant, are cases of personalty given by wills. There is a settled difference between the words "dying without issue," when relating to real and personal property. 1 Wms. 199, 433, 664. 2 Vez. 180. 3 Atky. 183. 3 Term Rep. 494. But no case can be shown, where on a limitation of lands, upon a dying without issue, those words have been confined to issue living at the time of the death. Cowp. 411. Doug. 486. Lord Kenyon it is true, questions the soundness of the distinction in 3 Term Rep. 146, but he afterwards recognizes it in 6 Term Rep. 313, 314.

Neither will the word "survivors" have the operation contended for, as appears by the following cases:—

Devise to A and his heirs of land in B, and to C and his heirs of land in D, and that the survivor shall be heir to the other, if either of them die without issue. A takes an estate tail with cross remainders in fee. Cro. Jac. 695, Chadock v. Cowley.

Devise to his wife for life of certain lands, and after her decease to his son G, and his heirs for ever, he paying to his daughter E 100l. within six months after his wife's death, and his age of 21 years; and if his son G shall happen to die without issue,

the 100*l.* being first paid, then the remainder of his estate to be divided amongst his sons and daughters, and the survivors of them. G has but an estate tail. T. Ray. 426, Wilson v. Dyson et al.

Devise of all his houses to his wife for life, remainder of one of them to his son R, and his heirs; remainder of another house to his daughter C, and her heirs; remainder of another house to his daughter J, and her heirs. But if any of his said issues die without issue of his body, then the other surviving shall have *totam illam partem*, &c., between them equally to be divided. They have an estate in tail, and fee expectant, each severally as to the messuage to them limited. 2 Leon. 129, Hawkin's case.

Devise to my son A, after the death of my wife B, and if C, my daughter do out-live A and his heirs, then C shall have it, conveys an estate tail to A, for heirs must mean of his body, as his sister on surviving him would be his heir general. Cro. Jac. 415, Webb v. Hearing.

It is submitted, that these authorities are couched in terms similar to the principal case, and that therefore Daniel Haines took an estate tail in the ten acres devised to him.

The justices at Nisi Prius held the matter under advisement; and this term the judgment of the court was pronounced.

M'Kean, C. J. Not having heard the arguments of counsel on this question, my decision must be founded on precedents, and the law, as it seems to me to be settled.

The manifest intention of the testator, collected from the whole will, if not contrary to law, is the polar star to guide the construction of wills, and must prevail.

Courts are bound by the uniform current of precedents. For deviating from what has been the course for a long series of time, though originally founded on fallacious grounds, would be productive of greater injury to society, from the uncertainty it introduces, than pursuing the ancient course. It is not of so much consequence what the rules of property are, as that they should be settled and known.

In this case, the intention of the testator seems plainly to have been, that his son Daniel, among other things, should have the ten acres in dispute, and his children after him. As David, the lessor of the plaintiff, is his eldest son, he meant it for him. The devise in the first clause in the will, is to " his son Daniel, his heirs and assigns for ever;" and he was to pay his sister 100*l.* &c., which *prima facie* carries a fee simple. But the latter clause " if either of my children die without issue lawfully begotten," &c., denotes,

that by the word . "heirs" in the preceding clause, the testator meant lineal and not collateral heirs; which if necessary, is corroborated by the devise over to the brothers.

It appears therefore, clear to me, that Daniel Haines, by the will of his father, took an estate tail, and that judgment should be given for the plaintiff. The cases in support of this opinion are numerous. I will cite a few of them. Cro. Jac. 695. Pollex. 487. 7 Co. 4. 3 Lev. 70. 2 Fearne. 203. Roe v. Scott et al. 3 Term. Rep. 143. Carth. 343. 5 Mod. 266.

Shippen, J.* In considering this case, it was with a sincere wish, I might be convinced that the law should be found in favor of the defendant, he appearing to have come in under a fair purchaser, and to have made some improvements on the land. But considerations of this kind must not induce us to unsettle the established rules of law, lest we set all titles to real property afloat.

The testator devises several distinct pieces of land to his several children, and annexes to every devise, the fee simple words, "to them, their heirs and assigns for ever." In a subsequent clause, he directs, that "if either of his children should die without issue lawfully begotten, then each and every of their respective shares should be equally divided to and amongst the survivors."

Although it is not contended, on the part of the defendant, as indeed it could not be with any prospect of success, that the word "heirs" may not be restricted and controlled by subsequent words, to mean "heirs of the body," yet it is urged, that if in this case from the subsequent words, it can be collected to be the *intention* of the testator, that the devise over, *after the words dying without issue*, should only take place, in case such devisee be living at the time of the death of the first devisee, then it should be construed an executory devise, and not a contingent remainder. The case relied on in support of this doctrine, is that of Pells v. Brown, in Cro. Jac. 590, where the devise was to his son Thomas and his heirs forever, and if he die without issue "living his brother William," then that his brother William should have the land; in that case, it was held that Thomas took a fee, the clause of his dying without issue not being indefinite, but with the contingency of his dying without issue "living William."

It is contended, that although in the principal case, there are

<hr>

*This and the succeeding opinion, though prepared, were not publicly delivered, for want of time.

no express words to restrict the devise, to the dying without issue in the life-time of the second devisee, yet there are words which equally manifest the intention of the testator to be such. This construction is drawn from the words " equally to be divided amongst the survivors." The word " survivors," in the plural number, it is said evidently shows the meaning of the testator to be, that the devise over, should not take place unless more than one of his other children should be living, at the time of the death of Daniel without issue, and is equal to his saying, " if Daniel should die without issue, living Samuel, Isaac, Jacob and Hannah, his other children, or any two of them,"—which would bring it within the case of Pells v. Brown.

The intention of the testator will doubtless have a considerable effect in the construction of all wills; but to prevail against the established rules of law, that intention must be manifest, and not be drawn only from some remote possible inconveniences, which may attend the adherence to those rules, which probably the testator might not have attended to.

It is said by Lord Hale, in the case of King v. Mulling, that a devise to a man and if he dies without issue, then over, is always construed to make an intail.

In a limitation upon a dying without issue, there is an established distinction between a devise of land and personal estate; in the latter case, the words are taken in the vulgar sense, which his dying without issue at the time of his death. But in a devise of real estate, they are constantly taken in the legal sense; namely, whenever there is general failure of issue.

There are not wanting cases in the books, of devises, with limitations to survivors, after the words dying without issue. In the case of Wilson v. Dyson, in Sir Tho. Raym. 426, where the devise was to his third son and his heirs forever, but if he die without issue, the remainder of his estate to be divided among his sons and daughters, and the survivors of them, it was adjudged an estate tail. In Chadock v. Cowly, Cro. Jac. 695, the words, I will that the survivors of them shall be heir to the others, if either of them die without issue, were adjudged an estate tail. In Roe v. Scott et al. 2 Fearne. 203, the words were, " if either of my three sons should depart this life without issue of his or their bodies," then the estate or estates of such sons shall go to the survivors or suvivor, and it was adjudged an estate tail.

The distinction made in the present case, founded upon the word " survivors " in the plural number, is, I fear, too refined. As to the intention of the testator, it affords no more room for

the construction contended for, than if it had been in the singular number "survivor." The remote consequences may be different; but most probably, the testator had them not in contemplation.

It is besides, a settled rule, that a devise shall never be construed an executory devise, when it may be a contingent remainder. I am on the whole of opinion, that Daniel Haines took only an estate tail in the premises, and that therefore judgment shall be given for the plaintiff.

Yeates, J. This case is a hard one on the defendant, who has erected a stone barn on the premises in question, his father conceiving that he had purchased an estate in fee simple from the devisee. But our judgments should not be influenced thereby, if the law shall be found against him. The greatest uncertainty and inconveniences would ensue, if we were not bound to follow former resolutions in cases of the same nature, *quæ sunt tradita et relicta.*

Numerous authorities may be found in the books, that an estate may arise, be enlarged, controlled and even be destroyed by implication, in the construction of wills. 2 Fonbla. 58. Thus a devise to A, and if he die without issue, remainder over to B, passes an estate tail to A. For though the devise to A generally, would pass only an estate for life of itself, yet as no benefit is given to B while there is any issue of A, the consequence would be, that as no interest springs to B, and no express estate is given to the issue of A after the death of A, the intermediate interest would be undisposed of, unless A were considered as taking for the benefit of his issue, as well as of himself. And as the words are capable of such amplification, the court naturally implies an intention in the testator that A should take in such a manner, that the property might be transmissible through him to his issue : and he is therefore considered to take an estate tail, which will descend to his issue. 2 Bro. Ch. Ca, 578. 1 Wms. 605, 758. 9 Co. 127, b.

If in the construction of wills, "every string ought to give its sound," in the language of Judge Doderidge (3 Bulst. 303) it necessarily follows, that to effectuate the general intention of Jacob Haines in the present case, the word "heirs" in the devise to his son Daniel, must be construed "heirs of the body;" because otherwise, the remainder limited over to the surviving children could not take effect.

It is true, that this devise is " to him, his heirs and assigns forever." But Lord Kenyon observed, in Porter v. Bradley, 3 Term Rep. 145, that "it is clear, those words may be restrained by subsequent ones, so as to carry only an estate tail."

There " lands were devised to A, his heirs and assigns forever, and if he die leaving no issue behind him," then over, the limitation over was held good by way of executory devise. The words " leaving no issue behind him, " were held to make a material difference, and to bring it within the case of Pells *v.* Brown, in Cro. Jac. 590; and in 2d Fearne (by Powel) 209, it is remarked, that the resolution was grounded on the peculiar penning of that part of the will, on which the question arose. And it is there further said, that the words " assigns for ever, " are strongly indicative of an intention that the devisee should take anassignable estate to him and his heirs; but not of themselves sufficient to take the case out of the principle or rule of construction, that a limitation shall never operate as an executory devise, where it may take effect as a remainder. Doug. 729. Nothing can be collected from the whole of this will, which clearly shows, that the words " if either of the children should die without issue lawfully begotten, " were to be restricted " to dying without issue at the time of such child's death." In cases " of dying without issue, " upon a limitation over of lands, there is no authority to prove, that such words have been confined to a dying without issue at the time of the death. There is a marked distinction between a devise of lands and personal estate. In the latter case, the words are taken in their vulgar sense; but in the former, in their legal sense. Cowp. 411. Doug. 486. This difference has been recognized in many cases. 1 Wms. 199, 433, 664. Prec. Cha. 328. 2 Ves. 125, 606, 683. But in cases of inheritance without a single exception, if lands are devised to one, or to one and his heirs, and if he die without issue remainder over, the devisee takes an estate tail by implication which shall go to his issue, and they shall take in course of descent, to all succeeding generations. Gilb. Equ. Rep. 149. Doug. 485, 486. Cowp. 411. 3 Term Rep. 494.

The argument of the defendant's counsel, drawn from the use of of the word " survivors" in this will, seems fully answered by the cases in Cro. Jac. 415, 695. T. Ray, 426, and 2 Leon. 129. When a fee is devised, and a secondary fee limited thereon, the secondary fee must be expressly limited to take effect within the given periods of executory devises, otherwise it will be deemed a perpetuity. Sand. on Uses, 193, and the cases there cited. In Beauclerk *v.* Dormer, 2 Atky. 308, K by his will says, " I make D my sole heir and executrix, and if she dies without issue, then to go to G." Lord Hardwicke held that the limitation over could not be confined to D's dying without issue, living at the time of her decease. And the authority of this case is recognized by Ld. Thurlow in 1 Bro. Cha. Ca. 190, Biggs *v.* Bensley.

I am therefore of opinion, that Daniel Haines was only entitled to an estate in fee tail in the ten acres of land in question, under his father's will.

Judgment for the plaintiff.