# Braden *et al.* versus Cannon *et al.*

A testator devised land to William and John, and charged it with the payment
of a legacy to, and the support of James; and added, "if any of my sons depart
this life without a *legal heir*, his part or portion of him so dying shall go and be
equally divided among the survivors of my sons:" *Held*,
1. That this was an estate tail in the first takers.
2. There is no entailment of the remainders, and the rule that requires the
construction in favor of an absolute vesting at as early a date as possible, pre-
vents such a construction.
3. When William died, the limitation over of his half took effect in favor of his
two brothers in fee simple.
4. When John died, his half went to his surviving brother James, in fee
simple, who then became seised in fee, under the will, of John's half, and half of
William's half. The other half of William descended, on his death, to his heirs
—his brother James and his sisters—as tenants in common.

5. To effectuate the clear intention of testators, we habitually construe the words *heir, issue, children,* interchangeably.

ERROR to the Court of Common- Pleas of *Westmoreland county.*

This was an action of ejectment, by James Braden and David Ferguson, plaintiffs in error, to recover two hundred and fifty acres of land in Derry township.

It was a case stated in the court below, depending upon the following clause in the will of John Braden :—

" Further, I will and bequeath unto my two eldest sons, William and John, all my real estate, to be equally divided among them, share and share alike, with the exception of four hundred dollars out of my real estate, which I will and bequeath unto my youngest son, James, to be paid unto him at the time he arrives at the age of twenty-one years. Also to have his maintenance and schooling out of my aforementioned real estate, what will be sufficient to make a common English scholar. And also, if any of my sons depart this life without a legal heir, his part or portion of him or them so dying shall go and be equally divided among the survivors of my sons. And my will and meaning is, that in case of any of my daughters departing this life without a legal heir of her body begotten, her or their part or portion so dying, shall be equally divided among her surviving sisters or sister."

The said testator left a widow, named Isabella, now deceased, and issue, three sons, William, John, and James, the last named being the defendant in interest here. William died unmarried, without issue, and intestate, about the year 1846. And John died in January, 1854, unmarried, without issue, and intestate.

The testator also left issue, Jane, the wife of William Cannon; Isabella, the wife of James Sweeny; Sarah, the wife of Leslie Sweeny; Agnes, or Nancy, the wife of Andrew Brown; and Margaret, the wife of David Elder; all of whom are still in full life, the first four named of them being the plaintiffs here.

The plaintiffs claim as heirs-at-law of William Braden and John Braden, the younger, deceased, whom, they allege, took the land in dispute, in fee simple, on the death of John Braden the elder, under and by virtue of his will, as they survived him ; and that having an absolute estate in the same as tenants in common in fee, upon their deaths it descended to their brother and sisters as their heirs-at-law, of whom the plaintiffs are four out of six.

The defendant, James Braden, claims the whole land by virtue of the will of his said father, John Braden the elder, deceased, under that clause of the same which limits the estates in the land to the survivors of his said sons.

On the 5th of October, 1854, the court entered judgment on

[Braden et al. *v.* Cannon et al.]

the case stated for plaintiffs, for four undivided sixth parts of the land demanded in the writ.

The entry of the judgment was the error complained of.

*Foster*, for plaintiff in error.

The first question presented for consideration is, what estate did John and William Braden take under the will of their father, and at what period was the estate to go over to survivors?

To sustain the judgment of the court below, it will be necessary to assume that the estate devised to William and John was an estate in fee simple, to such of the two as survived the testator, and both having survived him, and died without issue, the estate descended to their heirs, generally, under the intestate laws. This must have been the opinion of the court, for such is the effect of the judgment which was rendered.

I will not controvert the principle that in a devise to two or more, and to the survivors and survivor of them without more, that the words of survivorship refer to the death of the testator, and that all who survive him take as tenants in common in fee. The error into which the court fell was the applying of this principle to an estate of an entirely different character.

The devise clearly creates in John and William estates tail, with remainder to such of his three sons as should survive. The use of the words *legal heir*, by the testator, means heirs of the body, and not heirs generally. 3 Durn. & East, 488, n.; 2 Jarman on Wills, 274; 2 Yeates, 400.

That the testator did not mean dying without heirs, generally, is manifest, for the reason that the estate is devised over by him to those who would be heirs, generally, so that he must have intended the words to mean issue or children. *Lapsley* v. *Lapsley*, 9 Barr, 130; *Clark* v. *Baker*, 3 S. & R. 470; *Caskey* v. *Brewer*, 17 S. & R. 441; *Sharp* v. *Thompson*, 1 Wh. 130.

It is certainly a well settled rule of property, that if a devise to one in fee, and if he die without issue, or on failure of issue, or for want of issue, then over to another, the estate of the first taker is a fee tail, which if he has issue passes to them, *ad infinitum* as tenants in tail. The estate vests in the first taker, as a fee tail, and any devise over after a failure of issue must be after an indefinite failure of issue. 9 Watts, 450; 5 R. 231; 6 Barr, 45.

In the case now under consideration, the devise contains all the elements of an estate tail, the words dying without "*legal heir*," means dying without issue according to the authorities before referred to. There is also a limitation over to such of his sons as should survive, by the following words: " If any of my sons depart this life without a legal heir, his part or portion *of him or them so dying* " goes over. It is clear that the estate in the first takers

[Braden et al. *v.* Cannon et al.]

was an estate tail, because there is a limitation over on an indefinite failure of issue, there being nothing in the will, to show that it was to go over on their dying without issue, at any particular time. If then it is an estate tail, with remainder over to the survivor, on an indefinite failure of issue, James the plaintiff in error, could only take at the time when that event happened, which might or might not have happened in the lifetime of the testator.

If the limitation over in the event of the devisee's dying without issue, is to be overlooked altogether, and treated as if they had not been used by the testator, there might be some plausibility in the position assumed on the other side. But if they are to be considered operative words, fixing the character of the estate devised, they must receive the interpretation which the law has given to them, particularly, when it will not come in conflict with the clear intention of the testator.

The court below has, evidently, confounded this with a class of cases, where there is a devise to two or more and to the survivors, or survivor. In all such cases where the limitation is simply to the survivor, and the will indicates no other period to which the words of limitation are to be referred, the courts have held that it refers to the death of the testator.

In all these cases, however, it must be remembered, that the question was, at what time the interest vested in the devisees, and not as to the character of the interest they took. In this case James, the survivor, had no immediate interest in the land, his interest depended on the contingency of his brothers, (to whom the land was devised,) dying without issue, and whether they died without issue, before or after the testator, is of no consequence, so far as regards his interest. The time when his interest was to vest, is fixed by the will, but the court is now asked to say, that his right to take, must depend not on the fact of his brothers dying without issue, but on the fact, whether they both survived the testator or not.

*Cowan* and *M'Kinney*, for defendants in error.

By the first clause of the devise to John and William, the testator intended to give them a fee, as he uses the words, " All his real estate," and he also indicates the same by charging it with the payment of legacies to his other children. 2 Jarman on Wills, 171, marg., and 179, marg.; *Buckhart* v. *Butcher*, 2 Binney, 464; *Morrison* v. *Semple*, 6 Binney, 94. And he further intended that they should take and hold as tenants in common, because it is to be " equally divided between them, share and share alike."

2. By the second clause he contemplated several possibilities. 1. That one or both the devisees might die without leaving children in his own lifetime, which would create a lapse; this he prevented by limiting it over to the " survivors or survivor of his sons." 2.

[Braden et al. *v.* Cannon et al.]

If they or either of them died in his lifetime leaving children, he was no doubt aware that such children would take their parents' share, by substitution under the act of 19th March, 1810, hence he made no express devise to them. *Newbold* v. *Pritchett*, 2 Whart. 46.

3. He intended this limitation to the "survivors or survivor" to refer to such as survived himself, because the gift was immediate and in possession, the devisees were to take as tenants in common, and this construction gives effect to all the parts of the will. See *Doe* v. *Sparrow*, 13 East, 358; *Clayton* v. *Lowe*, 5 Barn. & Ald. 636; *Caldwell* v. *Skilton*, 1 Har. 152. Also, 5 Jarman on Wills, title Limitation to Survivors, 632. *Johnston* v. *Morton*, 10 Barr, 250.

4. We think he did not intend to create an estate tail in the devisees. 1. For the general reason that perhaps no layman ever did create one in this country, except by mistake. 2. The devisees were to have all his *real estate*, and it was to be divided equally between them, which is inconsistent with the idea of an estate tail, or its devolution; 2 Jarman, 277, marg. 3. He limits the legacies given to his daughters, by the same phrase as the devise to the sons over to the survivors; certainly he did not intend these legacies to go over upon an indefinite failure of issue of such daughters, perhaps one hundred years after his death.

5. We think if William and John survived him, he did not intend to limit their enjoyment of his "real estate" at all—that he intended that they might make partition among themselves, share and share alike; that after they had paid the legacies charged upon it, they should have a right to dispose of that for which they had paid, &c.

6. The original shares only are subject to the limitation to survivors here, not the accruing shares, hence even according to the defendants' construction, when William died, John and James would divide his "half" or "share" between them absolutely— each taking one-fourth of the whole—now John owning this fourth absolutely, on his dying intestate, four-sixth parts of it would descend to the plaintiffs his heirs-at-law. This is inevitable, even by his own showing, and is a result the testator did not foresee.

We think this case identical, in this State, with *Doe* v. *Sparrow*, and *Clayton* v. *Lowe*, in England, the only difference between them upon the face, being that the devise in the English cases providing expressly for the children of those of the devisees who might die, is removed by our statutory provision, in the act of 1810, which would have substituted the children of such as died in the room of the parent.

If William Braden here had died in the lifetime of his father, leaving children, those children would unquestionably have taken a fee simple in the real estate given to their father under this

will by virtue of the act of 1810, and they could not have done more, had their grandfather expressly devised it to them in that contingency. Clearly they would not have taken subject to the limitation to survivors, as it is now argued their father would and did do—and it is equally clear they would not have taken estates tail, with remainders over to John and James. It is therefore to be presumed the testator knew this, and adapted his will to it accordingly.

, The opinion of the court was delivered March 14, 1855, by

WOODWARD, J.—Had the testator stopped at that clause in the devise of the real estate, by which he charged the legacy of James, and his support and education on the land given to William and John, they would beyond controversy have taken a fee simple, for nothing less could result from a devise of *all* his real estate to them, share and share alike, subject to legacies, not only to James, but to the daughters also. Then on the death of William and John without issue, the estate would have gone to James, and the sisters as heirs-at-law. But he did not stop at that clause, but added, "if any of my sons depart this life without a *legal heir*, his part, or portion of him so dying, shall go and be equally divided among the survivors of my sons;" an impossible condition if the technical meaning be assigned to the term "legal heir," for neither of the devisees could die leaving a survivor, and be without a "legal heir." We defeat the manifest intention of the testator, if we construe these words according to their ordinary signification. A former part of the will shows that he intended his daughters should have the bulk of the personal estate, as the above clause proves that he meant the real estate should go to the sons. In respect to the personalty, he said in the last clause of the will, "my meaning is that in case of any my daughters departing this life without a *legal heir of her body begotten*, her or their part or portion so dying shall be equally divided among her surviving sister or sisters." The words of limitation in these two clauses mean, we suppose, the same thing; the latter translate the former. The sons shall have the real estate, and if either dies without legal heirs of his body begotten, that is, without a legitimate child, it shall go over to the survivors: the daughters shall have the personal estate, and if either dies without a legitimate child, it shall go over to the survivors. The expression "legal heir," therefore, cannot be construed heirs generally, but must mean heir of the body, or child.

To effectuate the clear intention of testators, we habitually construe the words *heir, issue, children,* interchangeably. A devise to a man and his children, or issue, or even without any words of limitation whatever, is held to pass the fee when such intention is apparent from the whole will, construed by its four corners;

[Braden et al. *v.* Cannon et al.]

and on the same principle, (the intention of the testator,) the word *heir* may be controlled, and reduced from its genuine sense to the significance of *children* or *issue*. " A devisor who uses words of limitation in an improper sense," said Judge Gibson, in speaking of the rule in *Shelley's case*, 1 H. 351, "may so explain the meaning of them by other words in the context, as to exclude his devise from the rule ;" " for it operates only on the intention when it has been ascertained, not on the meaning of the words used to express it." In *Porter* v. *Bradley*, 3 Durn. & East, 73, Lord Kenyon, speaking of the words " to him, his heirs and assigns forever," observed : " It is clear these words may be restrained by subsequent ones, so as to carry only an estate tail." And he adds : " A long string of cases may be cited, in order to show that where an estate is limited to a man and his heirs forever, and if he die, without leaving heirs, then to his brother, or to any person, or any persons who may be his heirs, these words shall not have their full legal operation, but shall be restrained to heirs of a particular kind, namely, heirs of the body."

" In the construction of wills," said Doderidge, 3 Bulst. 303, " every string ought to give its sound." " It is apparent," said Yeates, J., 2 Y. 408, " that to effectuate the general intention of the testator, the word 'heirs,' in the devise to his son Daniel, must be construed 'heirs of the body,' because, otherwise, the remainder limited over to the surviving children could not take effect."

Without multiplying authorities, these are sufficient for present purposes. The liberties which we are permitted and constrained to take with words of limitation in a will, in order to reach the general intention of the testator, are not tolerated in construing deeds. There grantors are presumed to intend what their words import, but so rigid a rule of construction applied to wills, would defeat most that are made, overthrow titles, and produce confusion and discord in families.

Brought irresistibly to the conclusion that this devisor meant issue or children by the expression "legal heir," the necessary consequence is to reduce the estate of the first takers to a fee tail. That such would have been the effect of the devise over if the word "issue" had been used, is too well established in our own authorities to admit of doubt. *Hains* v. *Witmer*, 2 Y. 400; *Clark* v. *Baker*, 3 S. & R. 470 ; *Caskey* v. *Brewer*, 17 S. & R. 441; *Heffner* v. *Knepper*, 6 W. 18; *Eichleberger* v. *Barnitz*, 9 Id. 447 ; *Langley* v. *Heald*, 7 W. & S. 96; *Lapsley* v. *Lapsley*, 9 Barr, 130.

If the words be construed child or children, the effect is the same, for the rule deduced from the English cases, as stated in Powell on Devises, 496, is, that they have established beyond contradiction, that a devise to a man and his children, he having

none at the time of the devise, gives him an estate tail. By the time of the devise, we are to understand, I apprehend, the time of its *taking effect*, rather than the time of *making* it; but the distinction is of no importance here, for neither when the will was made, nor when the testator died, had William or John a child. And devises to *sons* are governed by precisely the same principles as devises to children. Son is sometimes a word of limitation, and is synonymous with *male issue.* Powell, 503.

Did John Braden, when he signed his will with a cross, intend to create an estate tail? Nobody believes it. Not one layman in a thousand intends it. But he meant to give his land to his sons, and his personalty to his daughters. That is apparent all over his will. Then come in these artificial rules of law, to effectuate that paramount intention, and to compel execution of the will, not according to some learned conceit or imaginary equity, but in the very manner the testator would have had it executed. Accordingly, we hold that this was an estate tail in the first takers. But there is no entailment of the remainders, and the rule that requires the construction in favor of an absolute vesting, at as early a date as possible, prevents us from inclining to construe them as such.

It follows, therefore, that when William died, the limitation over of his half took effect in favor of his two brothers in fee simple. And when John died, his half went to his surviving brother James in fee simple. Thus James became seised in fee under the will, of the half which had been devised to John, and one-half of the half that had been devised to William. The other half of William's alone, which had become vested in John in fee, descended, on his death, to his heirs, that is, his brother James and his five sisters, as tenants in common, in equal proportions. Consequently, the plaintiffs are each entitled to one undivided twenty-fourth part of the land in controversy, and together to one-sixth part of it, and the defendant to the residue.

Judgment reversed, and judgment as above.