May Term, 1881, No. 144.                    May 3d, 1881.

## Stone *et al. versus* McMullen.

1. A testator who died in 1793 devised as follows: "I Give and devise to my Two Sons, Hugh McMullen & George McMullen, the plantation that I now live on to be Equally divided between them, to them their Heirs & Assigns forever, Subject to the payment of thirty Shillings Yearly to my daughter Elizabeth during her natural Life, & one-third of the Clear Rent yearly to Mye dearly beloved Wife during her Natural Life. It is also my Will that if Either of my two Sons Hugh or George should die without Legitimate Issue that the Survivor Shall Inherit the Whole of the deceased's part of the land afsd. . . . . . Further it is my will that my said two Sons Shall neither Rent Bargin nor Sell the land afsd nor Enter into Agreements, Indentures or bargins of Importance before they Arive to the Age of twenty-one Years but by the Approbation and Consent of my Executors." *Held*, that the words "if either of my two sons, Hugh or George, should die without legitimate issue," must be taken to mean an indefinite failure of issue, and that the devisees took an estate tail and not a fee simple.

2. The words "the survivor shall inherit" do not import a definite failure of issue so as to constitute an exception to the general rule of construction.

3. Nor does the clause with respect to renting, bargaining, and selling have such effect.

4. The case of Johnson *v.* Currin, 10 Barr, 498, is contrary to the general current of authority, both in England and Pennsylvania.

Error to the Court of Common Pleas of *York County.*

Ejectment by George McMullen against Thomas H. Stone and Jacob Wall.

Case stated between the parties for the opinion of the Court of Common Pleas in the nature of a special verdict with leave to either party to sue out a writ of error.

Hugh McMullen, of Monaghan township, York County, died in 1793, having made a last will dated November 29th, 1792, in which he devised, *inter alia*, as follows:

"I Give and devise to my Two Sons Hugh McMullen & George McMullen, the plantation that I now live on to be Equally divided between them, to them their Heirs & Assigns forever, Subject to the payment of thirty Shillings Yearly to my daughter Elizabeth during her natural Life, & one-third of the Clear Rent yearly to Mye dearly beloved Wife during her Natural Life. It is also my Will that if Either of my two Sons Hugh or George should die without Legitimate Issue that the Survivor Shall Inherit the Whole of the deceased's part of the land afs'd. I also Give and bequeath to my said two Sons Hugh or George all my Horses & Mares and all the farming utensils that Shall be in my possession at the time of my decease Together with two-thirds of all the Residue of my personal Estate at the appraisment after their Mother my beloved Wife maketh her Choise of the first third part thereof. Further it is my Will that my said two Sons Shall neither Rent Bargin nor Sell the land afs'd nor

[Stone *et al. v.* McMullen.]

Enter into Agreements, Indentures or bargins of Importance before they Arive to the Age of twenty-one Years but by the Approbation and Consent of my Executors."

After the death of the testator, and after his sons and devisees, Hugh and George McMullen, had become of age, they divided the land devised between them. George McMullen, by deed dated March 31st, 1819, sold his part, containing 92 acres and 142 perches, to George Sealer, who, March 29th, 1828, conveyed it to Jacob Cochlin, Jr. George McMullen died December 10th, 1850, leaving five children, one of whom, Hugh, who died July 21st, 1877, was the father of the plaintiff.

Hugh McMullen, son of the testator, June 14th, 1828, after the division with his brother, conveyed to the said Jacob Cochlin, Jr., 27 acres and 60 perches of his part of the land. Cochlin on the same day conveyed to Hugh McMullen, son of the testator, 37 acres and 30 perches of the land bought from Sealer.

Hugh McMullen, son of the testator, died March 22d, 1864, having made a last will, in which he devised all his property, real and personal, to his daughters Elizabeth and Mary Ann, who were his only living issue. Mary Ann McMullen died February 24th, 1879, intestate, and without issue. Elizabeth McMullen married David Newcomer, who died November 24th, 1874. Elizabeth Newcomer, widow, by deed dated February 28th, 1879, conveyed to Thomas Stone, one of the defendants, about 100 acres of the land which had belonged to her father, and by deed of same date she conveyed 28 acres and some perches of the said land to Jacob Wall, the other defendant. She died October 27th, 1879, without issue.

It was admitted that Hugh McMullen, son of the testator, and his brother George McMullen, remained in possession of the said tract until it was divided between them, and each of them afterwards of their respective parts until the sale by George McMullen to Sealer in 1819; that Sealer and his grantee, Cochlin, and those claiming under them, had adverse possession of the 92 acres and 142 perches of land conveyed to Sealer March 31st, 1819, from that date until the bringing of this suit, March 1st, 1880, and used the same as their own property, the land being assessed to them respectively, they paying the taxes assessed thereon, and no person having ever claimed or demanded the same, or any part thereof, or interest therein or thereto until a month or two before suit was brought, and that Hugh McMullen, son of the testator, and those claiming under him, had been in the same quiet and peaceable possession of his part of said tract

of land since the division between him and his brother until the first day of March, 1880. If, under the facts as stated, the plaintiff is entitled to recover any of the land in the possession of the defendants, or any fractional part, judgment to be entered for such part as he may be entitled to recover, otherwise judgment to be entered for the defendants.

The Court below, WICKES, J., filed, April 11th, 1881, the following opinion:

"George sold and conveyed, during his lifetime, his part of the real estate devised to him by his father, and it is sought to recover in this action not only that portion of the land devised to Hugh, but that also which George sold during his life, and which by various conveyances has also passed into possession of these defendants. But it is the admitted fact of the case that the purchasers from George, and those who hold under them, have been in continued and adverse possession of this part of the land since its conveyance, in 1819, and as the right of action accrued on the death of George, in 1850, it was conceded by the plaintiff's counsel that no recovery can be had, because of the bar of the statute, of so much of the land as George took under his father's will. We therefore dismiss this branch of the case.

"The important question before us grows out of the construction we are asked to give the clause of the will devising to Hugh and George the real estate in controversy, for it is not pretended that any other obstacle is presented to a recovery by the plaintiff of so much of the land as was devised to Hugh, except to determine the character of the estate taken by him under his father's will. Without attempting to wade through the great multitude of authorities relating to this subject, but relying confidently upon the correctness of the principles asserted in Eichelberger *v.* Barnitz, 9 Watts, 447, and Langley *v.* Heald, 7 W. & S., 96, which Mr. Justice Bell said in Eby *v.* Eby, 5 Barr, 463, 'settle the law in Pennsylvania,' we desire to advert as briefly as possible to those and a few of the subsequent cases, for their name is legion, to ascertain the fundamental principles which underlie this inquiry, and must determine the result. In Eichelberger *v.* Barnitz the general rule was asserted to be that the words 'if he die without issue,' or ' on failure of issue,' or ' for want of issue,' or ' without leaving issue,' then over, following a devise in fee, that the estate of the first taker is a fee tail, because the technical meaning of the words import an indefinite failure of issue, and that while the limitation over would be good as a remainder, it could not stand as an executory devise, because too remote.

"But Langley *v.* Heald furnishes us an illustration of an

[Stone *et al. v.* McMullen.]

exception to the general rule laid down in Eichelberger *v.* Barnitz, which is, that where there are expressions in the will clearly restricting the 'dying without issue,' etc., to a failure of issue at the time of the death of the first taker, or to some other time or event which must occur, if at all, within the time allowed for the happening of a contingency on which an executory devise may be limited, there the first devisee takes an estate in fee simple, and the limitation over is void as a contingent remainder, but good by way of executory devise.

"Such is also the doctrine of Williams *v.* Coward, 1 Gr., 21 ; of Lapsley *v.* Lapsley, 9 Barr, 130 ; of George *v.* Morgan, 4 Harris, 107, and a multitude of other cases to which I need scarcely refer.

"Indeed, the difficulty does not seem to be with the abstract principles of law, but rather their application to this particular case. It is asserted, in the first place, that the testator meant a failure of issue either at his own death or at that of the first taker, and the word ' survivor' is said to indicate that intention.

"When we remember that the devisees were only twelve and sixteen years of age respectively at the testator's death, it is difficult to conceive that such a thought could have entered his mind as a failure of issue at that time. I did not, however, understand this view of the case to be seriously pressed. But it was earnestly insisted that the death of the first taker was the period fixed by the testator when the failure of issue was to happen, if at all. There is absolutely nothing on the face of the will to indicate such an intention except the limitation over to the survivor.

"The case most relied upon, and which, it was said, nearly resembled the one at bar, was Anderson *v.* Jackson, 16 John, 382. There the devise was in fee to the two sons, and in a subsequent part of the will the testator directs that 'if either of the said sons should depart this life without lawful issue, his share or part shall go to the survivor.' And this was held to create a defeasible fee in the first taker, with a limitation over by way of executory devise. But it is impossible to rise from a careful consideration of that case without the conviction that it was decided in the face of English authorities, and only because under the New York statute, regulating descents, a current of decision existed, commencing with Fosdick *v.* Cornell, which could not be disturbed without unsettling the titles to real property. Chancellor Kent delivered a dissenting opinion, in which he reviews the cases at great length, commencing with the earliest reported case, following the statute *de donis*, and he asserts, as the sum and

substance of his elaborate examination and reasoning, 'that no point of law was ever more completely established and better fortified by all that is venerable in authority on each side of the Atlantic' than that the words of the devise mean an indefinite and not a definite failure of issue.

"And he further says, that the contrary doctrine was mistakenly, and upon a very imperfect examination of the subject, declared in the Supreme Court in Fosdick *v.* Cornell, so that the case is rather an authority against the position of the defendant. In Caskey *v.* Brewer, 17 S. & R., 443, a case involving the same question, Mr. Justice Huston took occasion to say, after affirming the English rule as our own, 'that New York seems to form, for the last twenty years, an exception.'

"The rule that the subsequent limitation over to the survivor or survivors of a class of persons *in esse* when the will is made, takes effect as an executory devise and not as a remainder limited upon an indefinite failure of issue, has never prevailed in this State, except in bequests of personal property, where the courts lay hold on any word or circumstance in the will, however slight, that may seem to afford a ground for such a construction.

"Our cases are full to the point, and they but echo the English authorities on this subject.

"In Hope *v.* Taylor, 1 Burr, 268, there was a disposition of the whole of the testator's real and personal estate to several with a limitation over to the survivors, if either should die without issue lawfully begotten, and it was adjudged to be an estate tail in the real property, and the limitation over of the personal estate void. In Amelia Smith's Appeal, 11 Harris, 9, there was also a devise of real and personal property to testator's children in equal shares, with a provision that in case of the death of any of them without issue, his or her share should be equally divided among the survivors. It was held to pass an estate tail in the land to the first taker, with vested remainders over in fee, and the absolute title to the personal property; and in Snyder's Appeal, 9 W. N. C., 213, the latest reported case on this subject, where the authorities are collected and reviewed, the same distinction is taken, and the same doctrine prevails.

"These cases serve to illustrate the subtle distinctions taken in support of limitations of personal property, but they serve also to show that the rule does not apply when the devise over is of real estate.

"Nor does there seem to be any reason, in the case of real property, why the survivor should be living at the happening of the event on which the limitation over is made to de-

[Stone *et al. v.* McMullen.]

pend. If the language of the will is such as to create an estate tail in the first taker, and a remainder in fee to the survivor, the remainder would vest immediately on the death of the testator, and pass on the failure of issue to the survivor in his own person, if alive, and if dead, to his heirs, who would be capable of taking at whatever period of time the failure of issue might happen : Wilmot *v.* Wilmot, 8 Ves., 10 ; Davidson *v.* Dallas, 14 Ves., 576 ; Caskey *v.* Brewer, 17 S. & R., 441 ; Amelong *v.* Dorneyer, 16 S. & R., 325 ; Lapsley *v.* Lapsley, 9 Barr, 130 ; Braden *v.* Cannon, 1 Grant, 65 ; Haines *v.* Witmer, 2 Yeates, 400 ; 5 Randolph's Reports, 273 and 308.

" I have found but a single instance since Eichelberger *v.* Barnitz, in our own reports, at variance with the principles declared, and the cases cited to sustain them.

" In Johnson *v.* Currin, 10 Barr, 498, a decision which stands so severely alone in our reports that it serves rather to warn us of the error it contains, than to furnish an authority we may safely follow, the Court gave to the 'survivor' the effect which we are asked to give it here, but it has been doubted, until, as we have said, it is no longer authority : Criley *v.* Chamberlain, 6 Casey, 165 ; Curran *v.* McMeen, 5 P. F. Smith, 490.

" I am therefore of the opinion that the word ' survivor,' in a devise of real estate, does not by force of any settled legal construction import a definite failure of issue, or confine the limitation over to a person *in esse* at the death of the testator.  .

" But, it is argued, there is a power of sale contained in this will, and that even admitting the technical words of the devise would otherwise create an estate tail, that such an estate would be wholly inconsistent with the power conferred.

" The language is, ' further it is my will that my said two sons shall neither rent bargain or sell the land aforesaid nor enter into agreements indentures or bargains of importance before they arrive to the age of twenty-one years but by the approbation and consent of my executors.'

" It is to be observed that this direction of the testator deprived the two minors of no right the law had not already deprived them of. It would, therefore, seem to have been written in ignorance of the legal disabilities already imposed upon them. The clause is not punctuated, and it is not easy to say precisely what it means. It is not, however, pretended that it confers an absolute power to sell, but it is said to give a conditional power.

" It is certain the power was never exercised. It is well

[Stone *et al. v.* McMullen.]

settled that although a particular power, if executed, might make a fee in the appointee, yet if not executed the estate limited iu default of appointment is vested.

"Said the late Judge George W. Woodward, in Barnet *v.* Deturk, 7 Wr., 95: 'It may be, though this point is not considered, that if no attempt to exercise the authority had been made, . . . . the provision would have been unimportant.' And, said Judge Strong, in Physick's Appeal, 14 Wr., 136, 'if no appointment was made, the will is to be read as if it contained no power of appointment.'

"In Dodson *v.* Ball, 10 P. F. S., 492, it was held that a power to appoint, if not exercised, will not operate to enlarge a life-estate into a fee. And again, it is said by Tilghman, C. J., in Clark *v.* Baker, 3 S. & R., 479, 'this power (viz., a power to sell) is said by the defendants to be inconsistent with an estate tail. Not at all. It is collateral to the estate tail, but not inconsistent. The testator had a right to give an estate tail subject to be defeated by this power.'

"I cannot, however, regard the will as giving, even by implication, a power to sell. It seems to have been a mere afterthought of the testator, by which he desired to prevent them from selling at all, or even renting without the approbation of his executors. If, as is contended, he intended to give a fee simple to his sons, certainly we are not at liberty to suppose that he further intended to impose restrictions upon the alienation of the property devised, for that he could not do. But if it was his intention, as the words of the devise clearly indicate, to create an estate tail in each of his sons, with cross-remainders in fee, then a doubtful power, never exercised, ought not to be permitted to defeat the clear purpose of the testator. We have not commented upon the words, 'die without legitimate issue,' as no question was suggested as to their effect if standing alone: 24 P. F. Smith, 418 ; 6 Norris, 362; 7 Norris, 127. . . . .

"Without, however, pursuing this subject further, for the reasons given, we enter. judgment for the plaintiff, . . . for the undivided one-tenth of the land which Hugh McMullen took under the will of his father and died seized of, with costs of suit."

The defendants took a writ of error, assigning for error the entering of judgment for the plaintiff, and not entering judgment for the defendants.

*V. K. Keesey* and *R. L. Muench* for plaintiffs in error.

By "failure of issue," testator meant a definite failure at the death of the first taker. He says the *survivor*, not the survivor, his heirs, etc., thereby meaning that if either Hugh

[Stone *et al.* v. McMullen.]

or George should die without child or children, then the survivor, Hugh or George, should inherit the whole: 2 Jar. on Wills, 268, 372; Hill *v.* Hill, 24 P. F. Smith; Taylor *v.* Taylor, 13 P. F. Smith, 481. The word *inherit* clearly means inherit from the testator: Ingersoll's Appeal, 5 Norris, 240.

The word *that* preceding the words, " the survivor shall inherit the whole, etc.," can, without violence to testator's intention, be read *then*, and the whole will carry out the intention of the testator: Eby *v.* Eby, 5 Barr, 461; Vaughan *v.* Dicks, 8 H., 514; Langley *v.* Heald, 7 W. & S., 96; Caldwell *v.* Skilton, 1 Harris, 152; Fahrney *v.* Holsinger, 15 P. F. Smith, 349; Leightner *v.* Leightner, 6 Norris, 147; Rapp *v.* Rapp, 6 Barr, 45; Johnson *v.* Currin, 10 Barr, 498.

In Doe *v.* Sparrow, 13 East, 359, death *without leaving issue*, was referred to death in the lifetime of testator. The context aided in the construction as it does here: Caldwell *v.* Skilton, 1 H., 152; Waugh's Appeal, 28 P. F. Smith, 436.

The restriction of sale that his two sons shall not bargain or sell the land, manifestly indicates the thought in testator's mind that this power had been given to them by previous clauses in the will.

A limitation over by will to survivors or persons in being, after the death of the first taker without issue, raises a strong presumption that a testator did not contemplate an indefinite failure of issue: Deihl *v.* King, 6 S. & R., 32; Eichelberger *v.* Barnetz, 17 S. & R., 295; Johnson *v.* Currin, 10 Barr, 498; Mifflin *v.* Neal, 6 S. & R., 460; Rapp *v.* Rapp, 6 Barr, 45; Anderson *v.* Jackson, 16 John, 382; Moffat *v.* Strong, 10 John, 16; Taylor *v.* Taylor, 13 P. F. Smith, 483; Hill *v.* Hill, 24 P. F. Smith, 173; Ingersoll's Appeal, 5 Norris, 240.

In this case we have, in addition, the two persons, Hugh and George named, the word *survivor* in the singular number, the survivor to inherit the whole of the *deceased's part*, a restriction of sale for a period, and the words *heirs and assigns forever* used in the devising clause omitted after the word survivor.

*W. C. Chapman* for defendant in error.
The devise to Hugh and George, " their heirs and assigns forever," would make a fee simple; but the subsequent clause which provides that if either of the two sons " should die without legitimate issue," the fee simple is cut down to a fee tail: Smith's Executory Interest, p. 285; Middleswarth's Administrator *v.* Blackmore, 24 P. F. Smith, 414; Haldeman *v.* Haldeman, 4 Wr., 29.

*Issue* means heirs of the body: Angle *v.* Brosius, 7 Wr.,

187; Kleppner *v.* Laverty, 20 P. F. Smith, 70; Taylor *v.* Taylor, 13 P. F. Smith, 481; Clark *v.* Baker, 3 S. & R., 470.

As a general rule the language, " die without leaving any legitimate issue," means issue indefinitely: Clark *v.* Baker, *supra;* Eichelberger *v.* Barnitz, 9 W., 447; Criley *v.* Chamberlain, 6 Casey, 161; Taylor *v.* Taylor, *supra.*

This construction will give way where there are other expressions on the face of the will, showing that the words were intended to have a different meaning, but these expressions must be clear, unequivocal, and leave no doubt: Guthrie's Appeal, 1 Wr., 9; Physick's Appeal, 14 Wr., 128.

The same principles have been applied in James's claim: 1 D., 47; Haines *v.* Witmer, 2 Yeates, 400; Clark *v.* Baker, 3 S. & R., 470; Heffner *v.* Kneppner, 6 W., 18; Gause *v.* Wiley, 4 S. &. R., 509; Rancell *v.* Cresswell, 6 Casey, 158; Braden *v.* Cannon, 12 Harris, 168; Hansell *v.* Hubbell, *idem*, 244; Potts's Appeal, 6 Casey, 168; Vaughan *v.* Dickes, 8 Harris, 509; Amelia Smith's Appeal, 11 Harris, 9; Kay *v.* Scates, 1 Wr., 31; Allen *v.* Markle, 12 Casey, 117; Wynn *v.* Story, 2 Wr., 166; Criley *v.* Chamberlain, 6 Casey, 161; Lapsley *v.* Lapsley, 9 Barr, 130; Guthrie's Appeal, 1 Wr., 14; Angle *v.* Brosius, 7 Wr, 487; Matlack *v.* Roberts, 4 Smith, 148; Gast *v.* Baer, 12 Smith, 35; Greenawalt *v.* Greenawalt, 21 Smith, 483; Hope *v.* Rusha, 7 Norris, 127.

The word *survivor* does not indicate a definite failure of issue: Wilson *v.* Dyson, Raymond's Rep., 426; Chadock *v.* Cowly, Cro. Jac., 695; Roe *v.* Scott, 2 Fearne, 287, and the Pennsylvania cases cited, *supra.*

Nor is the settled construction at all affected by the subsequent clause of the will. It is argued that it gives an implied power of sale, but that depends on the punctuation. In the original will, there is no punctuation of the sentence at all. Nor would an implied power affect the construction, since in a number of cases express powers to sell were held not to affect the quantum of the estate. The sentence punctuated to get at the true meaning of the testator, reads : " It is further my will that my said two sons shall neither rent, bargain nor sell the land aforesaid; nor enter into agreement, indentures, or bargains of importance before they arrive to the age of twenty-one years, but by the approbation and consent of my executors."

The opinion of the Court was read October 3d, 1881, by STERRETT, J.

The will of Hugh McMullen, the elder, admitted to probate in March, 1793, contains the following provisions, upon

the construction of which the present contention hinges, viz.: " I give and devise to my two sons, Hugh and George McMullen, the plantation that I now live on, to be equally divided between them, to them, their heirs, and assigns forever. Subject to the payment of thirty shillings yearly to my daughter, Elizabeth, during her natural life, and one-third of the clear yearly rent to my beloved wife, during her natural life. It is also my will that if either of my two sons, Hugh or George, should die without legitimate issue, that the survivor shall inherit the whole of the deceased's part of the land aforesaid. . . . . Further, it is my will that my said two sons shall neither rent, bargain, nor sell the land aforesaid, nor enter into agreements, indentures, or bargains of importance, before they arrive at the age of twenty-one years, but by the approbation and consent of my executors." These are the only clauses in the will that can have any bearing on the question presented for our consideration. The testator left six children, of whom Hugh and George, then respectively sixteen and twelve years of age, were the youngest. They took possession of the farm devised to them by their father, and shortly afterwards divided the same between them. Hugh died intestate in 1856, leaving two daughters, Elizabeth and Mary Ann, to whom he devised his portion of the land. In February, 1879, Mary Ann died intestate and without issue. A few days thereafter, Elizabeth, who had survived her husband, conveyed part of the land to Stone, one of the defendants below, and another part to Wall, the other defendant, and in October of the same year she died without issue. The issue of Hugh thus became extinct. George, the other devisee, died in December, 1850, leaving five children, all of whom have died since, leaving children, of whom the plaintiff below is one. During his lifetime, in 1819, George sold his part of the real estate, and the plaintiff sought to recover in this action not only that portion of the land devised to Hugh, but also that which George sold during his lifetime, and which by sundry conveyances had, in the meantime, passed to the defendants below. Inasmuch, however, as the purchasers from George and those claiming under them have been in continuous adverse possession since 1819, and as the right of action accrued in 1850, it was properly conceded that there could be no recovery as to that part of the land. But the statute of limitations has no application to Hugh's portion, and the only question that arises in regard to it is: What estate did he take under his father's will, an estate in fee simple or fee tail? This depends solely on whether the devise over was upon a definite or indefinite failure of issue. If it was the

[Stone *et al. v.* McMullen.]

latter, the devisee clearly took only an estate tail, as the
Court held, and in that event the judgment is right.   In the
first clause above quoted from the will, the testator devised
his plantation to his two sons, " their heirs and assigns for-
ever."    Standing alone, the language thus employed would
undoubtedly give them a fee simple; but it is well settled
that a testator may restrain the generality of a devise by
subsequent expressions, and convert that which otherwise
would have been a fee simple into an inferior interest ; and
in this mode, more frequently than in any other, is a par-
ticular estate given : Middleswarth's Administrator *v.* Black-
more, 24 P. F. Smith, 414.    The generality of the devise was
so restricted in this case.    In its legal signification, the word
" issue " very nearly resembles the technical phrase "heirs
of the body," and it is well settled that when real estate is
devised by one or more limitations in the same will, to a
person and his issue, the word " issue " will be construed as
a word of limitation, so as to give the ancestor an estate tail,
unless there are expressions in the will unequivocally indica-
tive of a contrary intent.    Such expressions as " if he die
without issue," " on failure of issue," " for want of issue,"
" without leaving issue," and the like, have frequently been
considered ; and, when standing alone in a will, the law de-
fines them and gives them a precise and certain signification.
They import an indefinite failure of issue, and thus create
an estate tail in the first taker.  The technical meaning given
to such phrases has long since become a settled rule of prop-
erty from which it would be unsafe to depart, except in
cases that come clearly within a recognized exception to the
rule.    The following are a few of the many cases in which
the subject has been considered : Clark *v.* Baker, 3 S. & R.,
470 ; Eichelberger *v.* Barnitz, 9 Watts, 447 ; Langley *v.*
Heald, 7 W. & S., 96; Eby *v.* Eby, 5 Barr, 463 ;  Angle *v.*
Brosius, 7 Wright, 187 ; Kleppner *v.* Laverty, 20 P. F. Smith,
70.    According to these and other authorities that might be
cited, the language employed by the testator, " if either of
my two sons, Hugh or George, should die without legitimate
issue," must be taken to mean an indefinite failure of issue ;
from which it follows that the devisee took an estate tail.

But while the rule of law which thus fixes the meaning
of certain forms of expression is, in a certain sense, an un-
bending one, it is not without some exceptions.    It is con-
ceded, as already intimated, that the construction referred
to will give way when the will contains other expressions
which clearly indicate that the technical words were intended
to have a different meaning.    The cases, however, show that
the intent, not to use the words in their legal sense, must be

[Stone *et al. v.* McMullen.]

unequivocal, and so plain that no one can misunderstand it: Angle *v.* Brosius, *supra ;* Guthrie's Appeal, 1 Wright, 9 ; Physick's Appeal, 14 Wright, 128. In an early English case we have an instance in which the legal sense was controlled by plain and unequivocal words. The testator died leaving issue three sons, William, Thomas, and Richard. He devised land to Thomas subject to the payment of twenty pounds to Richard at the age of twenty-one years, and then provided that if Thomas died "without issue, living William, his brother," the latter should have the lands in fee. The question was whether Thomas took an estate in fee or fee tail, and it was held that the clause " without issue, living William," did not mean an indefinite failure of issue, but a dying, in the lifetime of William, without issue.

It is claimed by the plaintiffs in error that the death of whichever of the two sons might happen to die first was the period fixed by the testator when the failure of issue was to occur, and that this definite failure of issue is indicated by the concluding words of the devising clause, " the survivor shall inherit," etc. In support of this view, Anderson *v.* Jackson, 16 John, 382, is cited. In that case there was a devise in fee to two sons, with a subsequent direction that " if either of the said sons should depart this life without lawful issue, his share or part should go to the survivor;" and it was held that the words of the devise created a defeasable fee in the first taker, with a limitation over by way of executory devise. But that case is contrary to the general current of authority both in England and here ; and the same may be said of Johnson *v.* Currin, 10 Barr, 498, and other cases that are supposed to recognize the same doctrine. All the cases in which the question has been considered, with very few exceptions, are opposed to giving any such effect to the word " survivor " as is claimed for it by the plaintiff in error: Wilson *v.* Dyson, Raym., 426 ; Chadock *v* Cowly, Cro. Jac., 495 ; Roe *v.* Scott *et al.,* 2 Fearne, 287 ; Haines *v.* Witmer, 2 Yeates, 400 ; Clark *v.* Baker, 3 S. & R., 470 ; Heffner *v.* Knepper, 6 Watts, 18 ; Lapsley *v.* Lapsley, 9 Barr, 130 ; Smith's Appeal, 11 Harris, 9 ; Rancel *v.* Cresswell, 6 Casey, 158 ; Hope *v.* Rusha, 7 Norris, 127. In one of the English cases, Roe *v.* Scott *et al., supra,* the words were " if either of my three sons shall depart this life without issue of his or their bodies, then the estate or estates of such sons shall go to the survivors or survivor;" and they were held to create an estate tail. The devise in Smith's Appeal was of real and personal property to the testator's children, with a provision that in case of the death of any of them without issue, his or her share should be equally divided among the survivors,

and, as to the land, it was held to pass an estate tail to the first taker.

The subsequent clause in regard to renting or selling the land can have no effect on the construction of the will, so far, at least, as the present question is concerned. All the questions arising in the case are so well discussed, and the authorities so fully cited in the opinion of the learned judge of the Common Pleas, that it is unnecessary to add anything to what is there so well said.

Judgment affirmed.